ALLSTATE INSURANCE COMPANY v. SHELBY MUTUAL INSURANCE COMPANY, CONCORD MOTORS, INC., RUBY CLEO WIDENHOUSE, RAY W. WIDENHOUSE AND DAVID ELROY CLONTZ AND R. B. CLONTZ.

(Filed 3 February, 1967.)

**1. Insurance § 3—**

An insurance policy is a contract between insured and insurer and must be construed to carry out the intent of the parties except insofar as a statute or authorized administrative order requires a different construction.

**2. Same—**

An ambiguous provision of an insurance contract will be given that meaning most favorable to insured, and exception to coverage is not favored; nevertheless the policy must be construed as written, and the courts may not rewrite it and thus make a new contract for the parties.

**3. Insurance § 59—**

Whether a claim comes under the exclusion from liability under a clause relating to other insurance is to be determined by construction of the policy to determine what event will activate the exclusion, without regard to the terms of the other contract of insurance, and the construction of the other policy is required only to determine whether it constitutes an event excluding coverage under the terms of the first policy.

**4. Same—**

A clause excluding liability under a policy of automobile insurance if the accident occurs while insured is using the vehicle in the automobile business does not apply when insured is driving a car as a prospective purchaser from an automobile dealer, since such use by insured is not a use in insured's automobile business.

**5. Same— Exclusion clause of garage liability policy held effective when prospective purchaser is covered by other collectible insurance.**

The accident in question occurred while the insured under an owner's liability policy was using, as a prospective purchaser, an automobile owned by an automobile dealer, the policy providing that the insurance with respect to use of a non-owned automobile should be excess insurance over any other valid and collectible insurance. The automobile dealer's garage liability policy provided that the policy should not apply to any loss covered by other valid and collectible insurance, either primary or excess, with further provision under the limits of liability that unless the total amount of such loss exceeded the limits of liability of all other policies

affording coverage, the insurer should then be liable only for the excess. *Held:* The existence of other insurance was an event activating the exclusion clause of the garage liability policy, and the event that would set in operation the limitation or deferment clause of the owner's liability policy thus did not occur, and only the owner's liability policy covered the liability in question.

**6. Same—**

The N. C. Financial Responsibility Law will be construed to protect victims of automobile accidents, and provision in a policy of liability insurance which contravenes that statute is void.

**7. Same—**

A provision in a liability policy excluding coverage if the accident in question is covered by other insurance does not contravene the N. C. Financial Responsibility Law, since the provision excluding liability is not operative unless there be in effect other insurance protecting a person injured by the use of a vehicle up to the amount required by the Law, the Law not being concerned with which company provides the coverage. G.S. 20-279.21(j).

APPEALS by plaintiff, Allstate Insurance Company, and by defendants, Shelby Mutual Insurance Company and Concord Motors, Inc., from *Bone, E.J.,* at the 12 September 1966 Civil Session of GUILFORD.

This is a suit for a declaratory judgment brought by Allstate Insurance Company for an adjudication of the nature, extent and priority of automobile liability insurance coverage provided by Allstate under its policy issued to Ray W. Widenhouse, and by Shelby Mutual Insurance Company under its policy issued to Concord Motors, Inc., with reference to claims and damages arising out of an accident in which an automobile owned by Concord Motors, Inc., and driven by Mrs. Widenhouse, struck and injured David Elroy Clontz, a minor child.

By consent, a jury trial was waived and the matter was submitted to the superior court upon the pleadings, stipulated facts and exhibits attached thereto. The superior court found the facts to be as set forth in these documents and drew therefrom conclusions of law referred to below. Upon these findings and conclusions the court adjudged that both the Allstate policy and the Shelby Mutual policy afford primary coverage to the driver, Mrs. Widenhouse, that the limit of Allstate's liability was $10,000, the limit of Shelby Mutual's liability was $5,000, that within such limits, the total loss sustained should be borne two-thirds by Allstate and one-third by Shelby Mutual, and that both companies were under a duty to defend the driver, Mrs. Widenhouse, in any suit brought by the injured boy.

From this judgment Allstate appeals, contending that the Shelby

Mutual policy provided primary insurance coverage to Mrs. Widenhouse, that Allstate is not liable at all under its policy for the reason that the automobile was being used at the time of the accident "in the automobile business," and thus was excluded from the coverage of the Allstate policy, and, if Allstate be liable at all, its liability would be limited to that portion of the loss which is in excess of the total coverage afforded by the Shelby Mutual policy.

Shelby Mutual and its policyholder, Concord Motors, also appeal from this judgment, contending that no insurance coverage is afforded by the Shelby Mutual policy to Mrs. Widenhouse on account of the claims arising out of this accident.

Stipulated facts, insofar as material, and summarized for the sake of brevity, are:

On 27 February 1965 an automobile owned, and held for sale, by Concord Motors, Inc., struck and injured David Elroy Clontz. It was driven by Mrs. Widenhouse, wife of Allstate's named insured, with the permission of Concord Motors for the purpose of determining whether she and her husband would purchase the car. The Clontz child, through his next friend, filed suit against Concord Motors and Mrs. Widenhouse. His father filed suit against them for damages by reason of such injuries and resulting medical expenses incurred by him. Both suits are now awaiting trial.

At the time of the accident the Shelby Mutual policy, issued to Concord Motors, designated a "Garage Liability Policy," was in effect. There was also then in effect the Allstate policy, under which Mrs. Widenhouse is an insured.

Allstate demanded that Shelby Mutual furnish a defense for Mrs. Widenhouse in the suits brought by the boy and his father, notifying Shelby Mutual that the Allstate policy is "excess insurance" only. Shelby Mutual has declined to provide defense or coverage to Mrs. Widenhouse, contending that the coverage of its policy does not extend to her with reference to the claims arising out of this accident. Shelby Mutual does not deny its duty, under its policy, to defend and to provide coverage for Concord Motors.

Both the Allstate policy and the Shelby Mutual policy were certified to the North Carolina Department of Motor Vehicles by the respective policyholders as their compliance with the provisions of the Financial Responsibility Law. Shelby Mutual knew, at the time it issued its policy, that it would be so certified in connection with the application of Concord Motors for the issuance to it of license plates for its vehicles, which plates were issued. A regulation of the Department of Motor Vehicles provided that such plates would not be issued to an automobile dealer unless there was in effect a liability insurance policy in the form known as "Garage Lia-

bility, Division I," or an alternative not applicable to the present case.

Part I of the Shelby Mutual policy is a "Garage Liability Policy, Division I," and is in a form approved by the North Carolina Commissioner of Insurance.

In consideration of a reduction in the premium charged for the Shelby Mutual policy, there was attached thereto an endorsement, designated "Endorsement AL 8522," the form of which was approved by the North Carolina Commissioner of Insurance, its use being optional. Both this policy form and this endorsement form are in general and approved use by many insurance companies writing liability insurance policies for garages and dealers.

The definition of "Persons Insured," in the Shelby Mutual policy as amended by endorsement AL 8522, reads:

> "Each of the following is an insured under Part 1, except as provided below:
>
> "(3) * * * any of the following persons while using such automobile with the permission of the named insured, provided such person's actual operation * * * is within the scope of such permission:
>
> "(a) * * *
>
> "(b) any other person, but only if no other valid and collectible automobile liability insurance, *either primary or excess,* with limits of liability at least equal to the minimum limits specified by the Financial Responsibility Law of the state in which the automobile is principally garaged, is available to such person * * *" (Emphasis added.)

It further provided in the foregoing endorsement, so included in and made part of the Shelby Mutual policy, with reference to the "Limits of Liability" under such policy:

> "Provided that with respect to a person described as insured under paragraph (3)(b) of Persons Insured * * *
>
> "(i) the applicable limit of the company's liability shall be the amount by which (1) the applicable minimum limit of liability for bodily injury or property damage specified in the Financial Responsibility Law of the state in which the automobile is principally garaged exceeds (2) the sum of the applicable limits of liability under all other valid and collectible insurance available to the insured, and
>
> "(ii) the insurance under this policy shall not apply to any loss to which the insured has other valid and collectible insurance unless the total amount of the loss exceeds the sum of the

limits of liability of all other policies affording such other insurance and the company shall then be liable, subject to clause (i) foregoing, only for the excess."

The following are significant provisions of the Allstate policy:

"The following are insureds * * * (b) With respect to a non-owned automobile, (1) the named insured * * * provided the actual use thereof is with the permission of the owner * * *

" '[N]amed insured' * * * includes his spouse, if a resident of the same household * * *

"This policy does not apply * * * (h) to a non-owned automobile while used (1) in the automobile business by the insured or (2) in any other business or occupation of the insured * * *

" '[A]utomobile business' means the business or occupation of selling, repairing, servicing, storing or parking automobiles. * * *

"If the insured has other insurance against a loss covered by Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss; *provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance.*" (Emphasis added.)

*Smith, Moore, Smith, Schell & Hunter for plaintiff Allstate Insurance Company.*

*Jordan, Wright, Henson & Nichols by Charles E. Nichols and Edward Murrelle for defendants Shelby Mutual Insurance Company and Concord Motors, Inc.*

LAKE, J. The nature and extent of the liability of an automobile liability insurance company depends upon the proper construction of the terms of its policy. The policy is a contract between the parties thereto and must be construed so as to carry out their intent, except insofar as a statute or an authorized administrative regulation or order requires a different construction. Rodman, J., speaking for the Court in *Muncie v. Insurance Co.*, 253 N.C. 74, 116 S.E. 2d 474, said:

"Freedom of contract, unless contrary to public policy or prohibited by statute, is a fundamental right included in our

constitutional guarantees. * * * Since the contractual pro-
vision is, as related to the facts of this case, a valid one, the
parties are entitled to have it enforced as written. We cannot
ignore any part of the contract."

It is well settled that, in the construction of a policy of insur-
ance, ambiguous provisions will be given the meaning most favor-
able to the insured. Exclusions from and exceptions to undertakings
by the company are not favored. *Insurance Co. v. Insurance Co.*,
266 N.C. 430, 146 S.E. 2d 410; *Anderson v. Insurance Co.*, 266 N.C.
309, 145 S.E. 2d 845. Nevertheless, it is the duty of the court to
construe an insurance policy as it is written, not to rewrite it and
thus make a new contract for the parties. *Hardin v. Insurance Co.*,
261 N.C. 67, 134 S.E. 2d 142; *Richardson v. Insurance Co.*, 254 N.C.
711, 119 S.E. 2d 871; *Pruitt v. Insurance Co.*, 241 N.C. 725, 86 S.E.
2d 401.

The terms of another contract between different parties cannot
affect the proper construction of the provisions of an insurance
policy. The existence of the second contract, whether an insurance
policy or otherwise, may or may not be an event which sets in
operation or shuts off the liability of the insurance company under
its own policy. Whether it does or does not have such effect, first
requires the construction of the policy to determine what event will
set in operation or shut off the company's liability and, second, re-
quires a construction of the other contract, or policy, to determine
whether it constitutes such an event. A provision in a policy of in-
surance is not rendered invalid by the presence of a "repugnant"
provision in another policy of insurance issued by a different com-
pany to a different policyholder, but the other policy, by reason of
its own terms, properly construed, may fall outside the class of
events which the first policy declares to be exclusions from or lim-
itations upon the liability of the company issuing the first policy.

In *Hawley v. Insurance Co.*, 257 N.C. 381, 126 S.E. 2d 161,
Moore, J., speaking for the Court, said:

"An insurance policy is a contract between the parties, and
the intention of the parties is the controlling guide in its in-
terpretation. It is to be construed and enforced in accordance
with its terms insofar as they are not in conflict with pertinent
statutes and court decision."

In the present case we have two policies of liability insurance
issued by different companies to different policyholders. The lia-
bility of each company must be determined by the terms of its own
policy, subject to such modification as may be imposed by statute
or by authorized administrative regulation or order. It is clear that

each policy would provide coverage to Mrs. Widenhouse against liability upon the claim of David Elroy Clontz had the other policy not been in existence.

The principal questions to be determined on this appeal are: (1) Is the existence of the Allstate policy an event which brings into operation the exclusionary clause of the Shelby Mutual policy? (2) Is the existence of the Shelby Mutual policy an event which brings into operation the provision of the Allstate policy deferring liability of Allstate? (3) Does the fact that Mrs. Widenhouse was driving an automobile, owned by a dealer, for the purpose of deciding whether to buy it, constitute an event which brings into operation the exclusionary provision of the Allstate policy relating to a non-owned automobile used by the insured "in the automobile business"??

We turn to the last question first since, if it be answered as Allstate contends it should be, that will determine the answer to question No. 1, and make it unnecessary to answer question No. 2.

There is no liability upon Allstate, under the terms of its policy, if, at the time of the injury to the Clontz boy, Mrs. Widenhouse was driving this automobile "in the automobile business"; that is, in "the business or occupation of selling * * * automobiles." Under the rule above stated, this exclusionary clause in the Allstate policy must be construed in favor of the insured; that is, in favor of the existence of coverage for Mrs. Widenhouse, if this is a reasonable interpretation of the language used in the policy.

It will be observed that the operation of this exclusionary clause in the Allstate policy is not contingent upon the existence of any other insurance covering Mrs. Widenhouse while so driving this automobile. Thus, if it be construed as Allstate contends, the holder of such an Allstate policy test drives the vehicle of a dealer at his peril. Unless the dealer has a policy of insurance in effect and covering the prospective customer so driving the automobile to the full extent of the coverage specified in the driver's own policy, the driver is wholly or partially uninsured while so driving.

We dealt with this problem in *Jamestown Mutual Insurance Co. v. Nationwide Mutual Insurance Co.*, 266 N.C. 430, 146 S.E. 2d 410. There we said: "It would be a strained construction of the phrase, 'used in the automobile business,' to apply it to a prospective purchaser of a vehicle who is 'trying it out' to see if he likes it." Accordingly, we there held that this exclusionary clause is not brought into operation by the fact that a prospective purchaser of an automobile, owned by a dealer, is driving it with the dealer's permission, to see if he wishes to purchase it, neither the dealer nor any of his representatives being present. We reaffirm that decision.

Consequently, the Allstate policy does afford some coverage to

Mrs. Widenhouse against the claim of the Clontz boy ·for his injuries. We come, therefore, to the question of whether its liability is affected by the existence of the Shelby Mutual policy, which, in turn, depends upon whether the existence of the Allstate policy is an event bringing into play the exclusionary clause of the Shelby Mutual policy. We first turn to the construction of the Shelby Mutual policy, irrespective of the provisions of the North Carolina Financial Responsibility Law, G.S. 20-279.1, *et seq.*, and without regard to regulations of the North Carolina Department of Motor Vehicles.

There is no uniformity among the decisions of other courts upon this and closely related questions, but much of the apparent lack of harmony in these decisions disappears upon a careful analysis of the factual situations presented to those courts. Few of the decisions from other jurisdictions involved policies containing the exact language in the two policies now before us. The answers to the questions now before us depend upon the constructions to be placed upon the language in these policies. Decisions from other jurisdictions as to the meaning and effect to be given to policies containing different language are helpful only insofar as they outline or point to broad, general principles to be applied in the construction of exclusionary or limiting provisions of policies of automobile liability insurance.

In the frequently cited case of *Oregon Auto. Ins. Co. v. United States Fidelity & Guar. Co.*, 195 F. 2d 958, the court had before it two policies not precisely like those now before us. There, the policy issued to the driver provided that, as to a claim arising out of his use of an automobile other than the one specified, it would be "excess" insurance over and above "other valid and collectible insurance." The policy issued to the car owner provided that it did not insure one other than the named insured if he had "other valid and collectible insurance." The court said, "It is plain that if the provisions of both policies were given full effect, neither insurer would be liable." This result, the court rejected.

We, likewise, reject such a result in the present case. To do so, it is not necessary to hold that the law requires one or both companies to be liable, and forbids the use of language in the respective policies which would relieve both from liability. In the present case, it is sufficient to state that it was clearly not the intent of the parties to the Shelby Mutual policy, or of the parties to the Allstate policy, that Mrs. Widenhouse would be an uninsured motorist while driving the automobile in question. The language used is not fairly susceptible to that interpretation. The Shelby Mutual policy was intended by its parties to provide coverage to Mrs. Widenhouse while driv-

ing the automobile, unless the event named therein occurred; that is, unless there was in effect a policy of another insurer of a type described in the Shelby Mutual policy. Similarly, the Allstate policy was intended by the parties thereto to provide primary coverage to Mrs. Widenhouse while driving this automobile, unless there was in effect the policy of another insurer of the type referred to in the limitation clause.

In the *Oregon Auto Insurance Company* case, *supra,* the court held that both policies covered the claim in question and the loss should be prorated between the two companies, saying:

> "In our opinion the 'other insurance' provisions of the two policies are indistinguishable in meaning and intent. One cannot rationally choose between them. We understand the parties to concede that where neither policy has an 'other insurance' provision, the rule is to hold the two insurers liable to prorate in proportion to the amount of insurance provided by their respective policies. Here, where both policies carry like 'other insurance' provisions, we think [they] must be held mutually repugnant and hence be disregarded."

Thus, the court in that case construed each policy as not being the event specified in the limitation or the exclusionary provision of the other policy. Consequently, as to each policy, it held that the event, upon which the limitation or exclusion of liability depended, had not occurred and, as a result, each company remained liable without limitation or deferment. Without either approving or disapproving the correctness of the principle of construction there applied, or the court's conclusion that the two policies there involved contained "like" provisions, we note that the "other insurance" provisions of the two policies before us are not "like" provisions.

In the leading case of *Zurich General Accident Liability Ins. Co. v. Clamor,* 124 F. 2d 717, the Zurich policy, issued to the owner of the car, provided that its coverage did not extend to "any person * * * with respect to any loss against which he has other valid and collectible insurance," whereas the other company's policy issued to the driver, provided that, as to his use of a non-owned car, the coverage of the policy would be "excess" over other valid and collectible insurance available to him. The court said:

> "A decision must rest upon a construction of the language employed by the respective insurers. * * * It will be noted that the language employed by Zurich in this respect is general in nature, while that employed by Car & General is specific, or, at any rate, more specific than Zurich. * * * The 'excess

insurance' provided by the latter is not 'other insurance' required by Zurich."

For this reason, the court there held that the event specified in *Zurich's* exclusionary clause had not happened and, therefore, the *Zurich* policy was in full force. This, in turn, was the precise event which set in operation the limitation or deferment clause of the other company's policy. Consequently, *Zurich* was held to be primarily liable for the loss in that case.

It is apparent that the *Zurich* case did not hold that there is an inherent quality in an "excess" clause which makes it impossible for a company to provide in its own policy that its liability shall be excluded by the existence of another policy containing an "excess" clause.

Subsequent cases, citing the *Zurich* case as authority, have not always noted this reason for the decision there rendered. However, it is observed in 8 Appleman, Insurance Law and Practice, § 4914, where it is said:

> "It has been held that where the owner of an automobile or truck has a policy with an omnibus clause, and the additional insured also has a non-ownership policy which provides that it shall only constitute excess coverage over and above any other valid and collectible insurance, the owner's insurance has the primary liability. In such case, the liability of the excess insurer does not arise until the limits of the collectible insurance under the primary policy have been exceeded. It should be noted that under this rule, the courts give no application to the other insurance clause in the primary policy, which provides that if additional insured has other valid and collectible insurance, he shall not be covered by the primary policy. *That is because the insurance under the excess coverage policy is not regarded as other collectible insurance, as it is not available to the insured until the primary policy has been exhausted. Or, to put it another way, a non-ownership clause, with an excess coverage provision, does not constitute other valid and collectible insurance within the meaning of a primary policy with an omnibus clause.*" (Emphasis added.)

In the recent case of *New Amsterdam Cas. Co. v. Certain Underwriters (Lloyds)*, 34 Ill. 2d 424, 216 N.E. 2d 665, the Lloyds' policy provided that an insured, other than the named insured, if "also covered by other valid and collectible insurance, * * * shall not be indemnified under this policy." The Illinois Court, citing the above statement in Appleman, held that such exclusionary

clause was not set in operation by the existence of another policy containing an "excess" clause. The reason given by the court was "because plaintiff's policy was not 'other' insurance but rather 'excess' coverage." That is, the Illinois Court held an "excess" policy was not the kind of policy specified in the Lloyds' policy as the event which would set Lloyds' exclusionary clause in operation.

The present case presents a different situation. Here, the Shelby Mutual policy is not ambiguous with reference to the intent of the parties to exclude coverage under it where the other policy contains an "excess" clause. The Shelby Mutual policy expressly makes the existence of such "excess" policy an event which sets the Shelby Mutual's exclusionary clause into operation. It states that a person in the category of Mrs. Widenhouse is an insured thereunder, "but only if no other valid and collectible automobile liability insurance, *either primary or excess,* * * * is available to such person." (Emphasis added.)

The clear meaning of this provision is that the existence of an "excess" policy (the Allstate policy) is an event which prevents the Shelby Mutual policy from operating at all with reference to Mrs. Widenhouse. Consequently, the event which would set in operation the limitation or deferment clause of the Allstate policy has not occurred, unless there is some statutory provision, or some authorized administrative regulation or order, which requires that the Shelby Mutual policy be given a different construction.

The construction and effect which we give to the exclusionary clause in the Shelby Mutual policy finds support in the decision of the Supreme Court of Florida in *Continental Cas. Co. v. Weekes,* 74 So. 2d 367, 46 A.L.R. 2d 1159. The Louisiana courts have taken a different view of the matter. *State Farm Mutual Auto. Ins. Co. v. Travelers Ins. Co.,* 184 So. 2d 750, cert. den., 249 La. 454, 187 So. 2d 439; *Lincombe v. Ins. Co.,* 166 So. 2d 920. The Louisiana cases start with the premise that the exclusionary clause in the one policy and the excess clause in the other policy are "like" provisions. From this premise, just as was done in *Oregon Auto Insurance Co. v. United States Fidelity & Guar. Co., supra,* they proceed to the conclusion that neither the exclusionary clause in the one policy (Shelby Mutual) nor the limitation or deferring clause in the second (Allstate) is set in operation by the existence of the other policy. We consider that premise to be unsound.

It remains to be considered whether the exclusionary clause in the Shelby Mutual policy is invalid on the ground that it violates the requirements of the Motor Vehicle Financial Responsibility Law, G.S. 20-279.1, *et seq.,* or is in conflict with authorized administrative regulations issued by the Department of Motor Vehicles.

The purpose of the Financial Responsibility Law is to protect victims of automobile accidents. Ambiguous provisions of the law must be construed so as to accomplish that purpose, and a provision in a policy of liability insurance which contravenes that Act is void. *Insurance Co. v. Roberts*, 261 N.C. 285, 134 S.E. 2d 654.

To give effect to the Shelby Mutual exclusionary clause does not leave either the injured boy or Mrs. Widenhouse, the driver, without the benefit of liability insurance to the full extent contemplated by the statute. The provision is that the Shelby Mutual policy does not apply if there is available to Mrs. Widenhouse "other valid and collectible automobile liability insurance * * * with limits of liability at least equal to the minimum limits specified by the Financial Responsibility Law." The Allstate policy provides her with insurance up to those limits if the Shelby Mutual's exclusionary clause is given full effect.

The purpose of the Financial Responsibility Law, and the policy of the State expressed therein, are not violated by the Shelby Mutual policy. On the contrary, that policy assures that there will be "valid and collectible" insurance in effect up to the amount required by the law. If it is not provided by another policy (Allstate's), the Shelby Mutual policy will provide such insurance. Neither the language of the statute nor the policy which caused its adoption is concerned with which company provides the coverage. The Act expressly provides, G.S. 20-279.21(j), "The requirements for a motor vehicle liability policy may be fulfilled by the policies by one or more insurance carriers which policies together meet such requirements."

Concord Motors, the owner of the automobile driven by Mrs. Widenhouse and the named insured in the Shelby Mutual policy, was required by G.S. 20-279.21(a) to have an "owner's policy" applicable to this automobile. G.S. 20-279.21(b)(2) provides that an owner's policy "shall insure the person named therein and any other person, as insured, using any such motor vehicle * * * with the express or implied permission of such named insured" up to the limits specified in the Act. We hold that this statute is satisfied by a policy which provides such insurance to such person subject to the provision that it will not apply if other valid and collectible insurance, in the amount required by the Act, is provided to such person by a different policy. In either event, the injured person has available the full amount of insurance required by the statute and the full purpose of the statute has been accomplished.

The same question was before the Supreme Court of Florida in *Continental Cas. Co. v. Weekes, supra.* That Court said:

INSURANCE CO. *v.* INSURANCE CO.

"There is no basis in the record before us for the conclusion that public policy will be violated by the enforcement of clause 3(b)(4) [identical with the clause in the Shelby Mutual policy here involved], although we cannot and do not hold that this will be true in every case. For aught that appears here, sufficient financial responsibility is provided for the protection of the public, and this is nothing more than a contest between insurance companies."

The regulations promulgated by the Department of Motor Vehicles with reference to the filing by automobile dealers of proof of financial responsibility, which are set forth in the record, do not, in our opinion, purport to require proof in addition to that required by the statute. It is, therefore, unnecessary to determine in this case what would be the effect of a regulation which did purport to impose requirements exceeding those of the statute. Since the Shelby Mutual policy is in compliance with the statutory requirement, it follows that it does not violate the regulation of the Department of Motor Vehicles. The certification by Concord Motors of such policy to the Department of Motor Vehicles as proof of its financial responsibility does not enlarge the liability of Shelby Mutual under the policy.

The court below erred in its conclusion that Mrs. Widenhouse is an insured under the Shelby Mutual policy. Consequently, it erred in adjudging that Shelby Mutual has any liability for the payment of any judgment recovered against Mrs. Widenhouse upon a claim arising out of the accident referred to in the pleadings. The court below was correct in adjudging that the Allstate policy affords protection, up to the maximum limits of liability set out therein, to Mrs. Widenhouse with respect to such accident and that, up to such limits, Allstate is under a duty to pay any judgment recovered against her by reason of such accident. The court was in error in holding that Shelby Mutual has a duty to defend Mrs. Widenhouse in any action brought against her by reason of such accident. The court was correct in holding that Allstate does have such duty to defend Mrs. Widenhouse in any such action. The judgment rendered below must, therefore, be reversed and the cause remanded for the entry of a judgment in accordance with this opinion.

Reversed and remanded.