THOMAS G. EAVES, PLAINTIFF v. UNIVERSAL UNDERWRITERS GROUP, AMICA MUTUAL INSURANCE COMPANY, AND RICHARD GARY SIMS, DEFENDANTS

No. 9110SC749

(Filed 6 October 1992)

Insurance § 549 (NCI4th)— two insurance policies—coverage provided by policy of nonowner driver—no coverage provided by owner's policy

In a declaratory judgment action to determine whether insurance coverage was provided by defendant nonowner driver's personal automobile policy or by the owner's garage liability policy, the trial court erred in ruling that the owner's policy provided primary coverage to the driver and that the driver's policy provided excess coverage, since the non-ownership policy never said it would *not* provide coverage if other insurance was available and the insurer thus automatically contracted for liability under any circumstances, and the owner's policy, by contrast, did not contract for any liability in its policy once other insurance was available; therefore,

the nonowner driver's policy provided coverage, while the owner's policy provided none.

**Am Jur 2d, Automobile Insurance §§ 432, 433.**

**Automobile insurance: umbrella or catastrophe policy automobile liability coverage as affected by primary policy "other insurance" clause. 67 ALR4th 14.**

**Apportionment of liability between automobile liability insurers one or more of whose policies provide against any liability if there is other insurance. 46 ALR2d 1163.**

APPEAL by defendant Universal Underwriters Group from judgment entered 31 May 1991 in WAKE County Superior Court by *Judge Robert L. Farmer.* Heard in the Court of Appeals 25 August 1992.

Plaintiff-appellee brought this declaratory judgment action against defendants Amica Mutual Insurance Company (hereinafter Amica), Universal Underwriters Group (hereinafter Universal), and Richard Gary Sims (hereinafter Sims), seeking a determination of the extent and order of coverage provided to Sims by the two insurers.

The record reveals that the coverage dispute arose out of an automobile accident which occurred on 29 May 1988. Plaintiff was injured when his motorcycle collided with a car owned by Singleton Chevrolet-Buick-Chrysler-Plymouth, Inc. (hereinafter Singleton Chevrolet) and driven by Sims. At the time of the accident, Sims was insured by Amica under a standard personal automobile liability policy for $300,000, and Singleton Chevrolet had a garage liability policy issued by Universal for $500,000.

The facts giving rise to the action are not in dispute. Singleton, one of the owners and officers of Singleton Chevrolet, owned a fishing boat and trailer that was usually towed by a Blazer automobile, a loaner vehicle for the dealership. Prior to the date of the accident, Singleton gave Tommy Leonard (hereinafter Leonard) permission to use the Blazer, the boat and the trailer to go on a fishing trip. Leonard decided to take along his son, his friend Sims, and Sims' family. On the day of the fishing trip, Leonard was too tired to drive, so he asked Sims to take over the driving for him. At the time of the collision, Sims was operating the vehicle and Leonard was sitting in the passenger seat next to him.

**EAVES v. UNIVERSAL UNDERWRITERS GROUP**

[107 N.C. App. 595 (1992)]

All parties moved for summary judgment with regard to the coverage issues. Defendant Universal sought a determination that it provided no coverage to Sims. Defendant Amica sought a declaration that Universal was the primary insurer up to the limits of its policy or was at least the primary insurer up to the limits required by North Carolina's Financial Responsibility Act.

The trial court granted summary judgment in favor of plaintiff and defendant Amica. In doing so, the trial court ruled that Universal provided primary coverage to Sims under its policy for $500,000, and Amica provided excess coverage in the amount of $300,000.

*Teague, Campbell, Dennis & Gorham, by George W. Dennis, III, for plaintiff-appellee.*

*Petree Stockton & Robinson, by James H. Kelly, Jr., for defendant-appellant Universal Underwriters Group.*

*Young, Moore, Henderson & Alvis, P.A., by Walter E. Brock, Jr. and Knox Proctor, for defendants-appellees AMICA Mutual Insurance Company and Richard Gary Sims.*

WELLS, Judge.

Although defendant Universal sets forth three alternative assignments of error for our review, we are limiting our review solely to the dispositive issue of which insurer owes Sims coverage. Universal challenges the trial court's determination that it was Sims' primary insurer and ultimately liable for the full coverage limits of its policy. Instead, Universal contends that it owed no insurance coverage to Sims in light of the coverage already afforded him by defendant Amica. After reviewing the record and controlling case law, we reverse the trial court's decision.

In determining the nature and extent of insurance liability coverage, we must give careful consideration to the construction of the policy terms. *Insurance Co. v. Insurance Co.*, 269 N.C. 341, 152 S.E.2d 436 (1967).

Universal's garage liability policy limits its coverage by the following "MOST WE WILL PAY" clause:

> With respect to persons or organizations required by law to be an INSURED, the most WE will pay is that portion of such limit needed to comply with the minimum limits provision of such law in the jurisdiction where the OCCURRENCE took place.

When there is other insurance applicable, WE will pay only the amount needed to comply with such minimum limits after such other insurance has been exhausted.

Because Universal's policy is an owner's "motor vehicle liability" policy, its coverage limits must comply with the terms of the Financial Responsibility Act, N.C. Gen. Stat. § 20-279.21. Universal argues that the "MOST WE WILL PAY" clause effectively limits its coverage to the minimum limits of the Financial Responsibility Act. Next, Universal points to its "OTHER INSURANCE" provision which purports to make its coverage excess or secondary "for any person or organization who becomes an INSURED under this Coverage Part as required by law." Universal argues that these two provisions define its policy coverage so as to exclude liability where there is another insurance policy covering the insured and satisfying the minimum limits of the Financial Responsibility Act. Universal reasons that since Amica's policy covers the insured and satisfies the minimum coverage requirements of the Act, it owes no coverage to Sims.

The problem is that Amica's personal liability policy also contains an "OTHER INSURANCE" provision limiting coverage. The policy stipulates that any insurance Amica provides for a vehicle the insured does not own shall be excess over any other collectible insurance. Since Sims was not driving a vehicle he owned, Amica's "OTHER INSURANCE" provision applies to the case at hand. The question then becomes, if both Universal's and Amica's policies contain clauses making their insurance excess where other insurance is available, which policy's terms take precedence?

Until recently, our courts have held that the "excess" language in a non-ownership liability policy such as Amica's takes precedence over the excess clause in a garage liability policy like Universal's policy. Under that interpretation, Universal's insurance was considered "other collectible insurance" for purposes of excluding Amica from coverage, but Amica's insurance would not constitute "other applicable insurance" which would exempt Universal from coverage. *United Services Auto. Assn. v. Universal Underwriters Ins. Co.*, 104 N.C. App. 206, 408 S.E.2d 876 (1991); *see Insurance Co. v. Insurance Co.*, 269 N.C. 341, 152 S.E.2d 436 (1967).

In *United Services*, our Court faced the precise issue on substantially the same facts as the case before us here. United Services' policy stipulated under its "OTHER INSURANCE" provision that any

EAVES v. UNIVERSAL UNDERWRITERS GROUP

[107 N.C. App. 595 (1992)]

insurance it provided for a vehicle the insured does not own shall be excess over any other collectible insurance. Universal's policy also contained an "OTHER INSURANCE" provision purporting to make its coverage excess "for any person or organization who becomes an INSURED under this Coverage part as required by law." Universal argued that its garage liability policy coverage, by virtue of its "OTHER INSURANCE" clause, was rendered secondary to United Services' personal automobile policy. The court rejected Universal's position. In interpreting Universal's "OTHER INSURANCE" provision, the court found the language "required by law" to be ambiguous and read it out of the policy. It then concluded that after removing the ambiguous language, Universal's "OTHER INSURANCE" clause clearly provided primary coverage to the insured. Furthermore, the court held that, unlike the language in Universal's policy, United Services' non-ownership clause *clearly* made its policy excess whenever there was other collectible insurance.

In the leading case of *Zurich General Accident & Liability Ins. Co. v. Clamor*, 124 F.2d 717 (1941), the court also interpreted two policies with excess clauses virtually identical to those in question here. In that case, the owner's policy provided that its coverage did not extend to "any person . . . with respect to any loss against which he has other valid and collectible insurance," whereas the driver's policy provided that, as to his use of a non-owned car, the coverage would be "excess" over other valid and collectible insurance available to him. *Id.* at 720. The court held that the car owner's policy was in full force and his insurer was primarily liable because the driver's excess insurance was not "OTHER INSURANCE" for purposes of setting the owner's policy limitation into effect.

Other insurance law authority supports these decisions:

It thus has been held that where the owner of an automobile or truck has a policy with an omnibus clause, and the additional insured also has a non-ownership policy which provides that it shall only constitute excess coverage over and above any other valid, collectible insurance, *the owner's insurer has the primary liability.*

8A Appleman, *Insurance Law and Practice* § 4909.45 (Emphasis added.)

Recently, the North Carolina Supreme Court took an entirely different view of existing insurance law in this State by reversing *United Services. See United Services Auto. Assn. v. Universal Underwriters Ins. Co.*, 332 N.C. 333, --- S.E.2d --- (1992). The Supreme Court held that Universal *had* effectively defined its policy limits to exclude liability in the event there was other collectible insurance which met the minimum standards set by the Financial Responsibility Act. It also found the inclusion by United Services of an "excess" clause limiting liability where other insurance was available and where the insured was driving a vehicle he did not own, to be immaterial. The Court determined that because the non-ownership policy never said it would *not* provide coverage if other insurance was available, the insurer automatically con-- tracted for liability under any circumstances, and that Universal, by contrast, had not contracted for any liability in its policy once other insurance was available.

Thus, the precise issue before us has now been decided by the Supreme Court of North Carolina. Required as we are to follow precedent of the Supreme Court, we hold, as we must, that Universal does not provide any coverage to Sims. Accordingly, we reverse the judgment of the trial court and remand the case for judgment consistent with this opinion.

Reversed and remanded.

Judges ORR and GREENE concur.