DALLAS L. ISENHOUR, AND WIFE, SANDRA K. ISENHOUR v. UNIVERSAL UNDER-
WRITERS INSURANCE COMPANY, AND UNIVERSAL UNDERWRITERS GROUP

No. 47PA94

(Filed 8 September 1995)

**1. Insurance § 528 (NCI4th)— automobile insurance—inter-policy stacking of fleet and nonfleet policies**

The interpolicy stacking of fleet and nonfleet policies is permissible under N.C.G.S. § 20-279.21(b)(4).

**Am Jur 2d, Automobile Insurance §§ 292, 329, 368, 432.**

**2. Insurance § 533 (NCI4th)— multiple coverage fleet insurance—umbrella coverage—underinsured motorists coverage**

The insurer of a multiple coverage fleet insurance policy which includes umbrella coverage must offer the insured underinsured motorists (UIM) coverage equal to the liability limits under the umbrella coverage section if above the statutory minimum, and where there is no evidence that the insured either

ISENHOUR v. UNIVERSAL UNDERWRITERS INS. CO.

[341 N.C. 597 (1995)]

rejected UIM coverage in writing for the umbrella section of the policy or selected a different limit, and the umbrella section provides bodily injury liability coverage of $2,000,000, the umbrella section of the policy provides UIM coverage pursuant to N.C.G.S. § 20-279.21(b)(4) in an amount equal to the $2,000,000 policy limits for bodily injury liability specified in the umbrella section.

**Am Jur 2d, Automobile Insurance § 322.**

**"Excess" or "umbrella" insurance policy as providing coverage for accidents with uninsured or underinsured motorists. 2 ALR5th 922.**

3. **Insurance § 527 (NCI4th)— automobile insurance—fleet policy—person insured of second class—UIM coverage— wife not in vehicle—no UIM coverage**

Where plaintiff-driver was using his employer's automobile with the employer's permission at the time of an accident, and the employer's vehicle was insured under a fleet policy, plaintiff-driver is a person insured of the second class for UIM purposes and is thus entitled to UIM coverage under the umbrella section of the fleet policy. However, the driver's wife was not a person insured of the second class and was not entitled to UIM coverage under the fleet policy since she was neither using the insured vehicle nor a guest in the vehicle at the time of the accident. N.C.G.S. § 20-279.21(b)(4).

**Am Jur 2d, Automobile Insurnace §§ 219, 258, 267, 320.**

4. **Insurance §§ 529, 547 (NCI4th)— driver of employer's vehicle—UIM coverage—primary fleet insurance exceeding judgment—settlement with personal insurer for less than UIM limit—fleet UIM insurance not affected**

Where plaintiff was driving his employer's automobile at the time of an accident, the employer's automobile was insured under a fleet policy issued by defendant-insurer which contained an "other insurance" clause providing that such insurance was primary except for a covered vehicle not owned by the insured, and plaintiff was insured under a nonfleet personal policy containing an "other insurance" clause stating that the insurance provided for a vehicle not owned by the insured was excess, the employer's fleet policy provided primary UIM coverage and plaintiff's personal policy provided secondary UIM coverage for plaintiff's injuries. Therefore, where the fleet policy provided UIM coverage

exceeding plaintiff's judgment against the tortfeasor, this is not a stacking case since plaintiff is entitled to satisfy his entire judgment from the fleet policy, and the employer's fleet insurer is not absolved of liability for UIM coverage because plaintiff settled with his personal insurer for an amount less than the UIM limit under his policy.

**Am Jur 2d, Automobile Insurance § 434.**

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 113 N.C. App. 152, 437 S.E.2d 702 (1993), affirming an order granting summary judgment for defendants entered 10 November 1992 by Burroughs, J., in Superior Court, Catawba County. Heard in the Supreme Court 16 February 1995.

*Pritchett, Cooke & Burch, by David J. Irvine, Jr., for plaintiff-appellants.*

*Hutchins, Tyndall, Doughton & Moore, by Kent L. Hamrick, for defendant-appellees.*

FRYE, Justice.

On 29 April 1989, plaintiff Dallas Isenhour was injured when the vehicle he was operating collided with a vehicle driven by Willie Kate Clark. The vehicle Mr. Isenhour was operating was owned by his employer, Far East Motors, Inc. [hereinafter Far East Motors], and was a covered automobile under a multiple-coverage fleet insurance policy purchased by Far East Motors. The fleet policy was issued by defendants, Universal Underwriters Insurance Company and Universal Underwriters Group [hereinafter Universal].

On 12 March 1990, Dallas and Sandra Isenhour instituted an action against Willie Kate Clark for damages for personal injuries sustained in the accident. In the complaint, the Isenhours alleged, among other things, negligence in failing to keep a proper lookout and driving in a reckless manner. Mr. Isenhour asserted a claim for serious, painful, and permanent bodily injuries causing medical and other expenses and decreased earning capacity. Mrs. Isenhour asserted a claim for loss of consortium. At the time of the accident, both Clark and the Isenhours were insured by Nationwide Mutual Insurance Company [hereinafter Nationwide] under nonfleet personal automobile insurance policies.

The Isenhours' policy with Nationwide insured three vehicles and carried underinsured motorists (UIM) coverage limits of $100,000 per person/$300,000 per accident with a separate premium being paid for each vehicle. Ms. Clark's policy with Nationwide provided liability coverage limits of $50,000 per person/$100,000 per accident. On 11 July 1991, Nationwide paid to the Isenhours $50,000, the per-person liability limit under the Clark policy. Additionally, the Isenhours settled for $25,000 under the UIM portion of their Nationwide policy.

Thereafter, plaintiffs' attorney notified Universal of the Isenhours' intent to seek "additional compensation" under the UIM coverage in Far East Motors' policy with Universal. In a 17 July 1991 letter, plaintiffs' attorney informed Universal of his clients' demand for settlement of $1,200,000 and sent Universal copies of the complaint and other pertinent documents.

On 1 October 1991, plaintiffs' attorney notified Universal that the case was set on the 14 October 1991 trial calendar. Universal did not appear for trial. Universal sent plaintiffs' attorney a letter dated 31 January 1992 in which it denied it was a party to the suit and produced its insurance policy for review.

The trial court entered judgment in the underlying action against Ms. Clark on 10 March 1992 in the amount of $750,000 for Mr. Isenhour and $150,000 for Mrs. Isenhour. The judgment stated that the parties had waived trial by jury and specific findings of fact and conclusions of law and provided that the plaintiffs could recover from Ms. Clark to "the extent of underinsured motorist's [sic] coverage provided by an underinsured motorist carrier other than Nationwide Mutual Insurance Company," as per a partial release negotiated by the parties. This partial release limited Nationwide's total liability under the Clark and Isenhour policies to $75,000, the total amount of the settlement.

In a letter dated 12 May 1992, Universal notified plaintiffs' attorney that the maximum that might be available to the Isenhours under the Far East Motors fleet policy was $60,000 and that an umbrella provision in the policy did not apply to the Isenhours' claim. Universal explained that the coverage parts for the underlying policy and the umbrella policy were separate and distinct forms of coverage, adding that UIM coverage is added to the umbrella policy only by specific endorsement. Universal stated that only $60,000 in UIM coverage existed via specific endorsement and that no UIM coverage had been

endorsed onto the umbrella provision. Accordingly, Universal tendered $60,000 in settlement of the UIM claim under its fleet policy.

On 8 June 1992, the Isenhours filed suit against Universal alleging (1) gross negligence, (2) unfair and deceptive acts or practices in violation of N.C.G.S. § 58-63-15(11) and N.C.G.S. § 75-16, and (3) liability by virtue of N.C.G.S. § 20-279.21(b)(4). Universal filed its answer on 23 July 1992, denying liability and defending on the basis that (1) the policy is a fleet policy under N.C.G.S. § 20-279.21(b)(4) and cannot be stacked onto a nonfleet policy; (2) plaintiffs are not insureds under the policy; and (3) Universal was not a party to the underlying action against Clark, did not participate in the settlement agreement, and cannot be bound by that agreement.

Universal moved for summary judgment on 25 August 1992. Universal submitted two affidavits in support of its motion for summary judgment. In the first affidavit, Universal's underwriting manager stated that Universal's policy issued to Far East Motors was a fleet policy that insured a multiple and changing number of motor vehicles used in Far East Motors' business. In the second affidavit, Nationwide, which had issued policies to both Clark (the tort-feasor) and the Isenhours, stated that both policies were nonfleet personal automobile insurance policies.

On the basis of these two affidavits and the Court of Appeals' decision in *Watson v. American Nat'l Fire Ins. Co.*, 106 N.C. App. 681, 417 S.E.2d 814 (1992), *aff'd on other grounds*, 333 N.C. 338, 425 S.E.2d 696 (1993), the trial court granted summary judgment in favor of Universal and dismissed the Isenhours' claims on 10 November 1992. From the entry of summary judgment, plaintiffs appealed to the Court of Appeals.

The Court of Appeals held that its decision in *Watson* "bar[red] the coverage sought in this case and [that] the trial court correctly granted summary judgment." *Isenhour v. Universal Underwriters Ins. Co.*, 113 N.C. App. 152, 155, 437 S.E.2d 702, 704 (1993). We allowed plaintiffs' petition for discretionary review, and we now reverse the decision of the Court of Appeals which affirmed the trial court's entry of summary judgment in favor of defendants.

Defendants contend that the Court of Appeals properly affirmed the trial court's entry of summary judgment because the trial court and the Court of Appeals correctly applied the Court of Appeals' decision in *Watson*. We disagree.

**ISENHOUR v. UNIVERSAL UNDERWRITERS INS. CO.**

[341 N.C. 597 (1995)]

In *Watson*, the Court of Appeals held that "fleet policies may not be stacked onto nonfleet policies" under N.C.G.S. § 20-279.21(b)(4). *Watson*, 106 N.C. App. at 686, 417 S.E.2d at 818. The Court of Appeals stated that

> the appellee's policy is a fleet policy under *Sutton* [*v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 382 S.E.2d 759, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989)] and excluded from inter-policy stacking, since the stacking provisions of N.C.G.S. § 20-279.21(b)(4) cover only nonfleet private passenger motor vehicle insurance. *Aetna Casualty and Sur. Co. v. Fields*, 105 N.C. App. 563, 414 S.E.2d 69 [, *disc. rev. denied*, 331 N.C. 383, 417 S.E.2d 788] (1992). We recognize that inter-policy stacking is permitted so as to provide the innocent victim of an inadequately insured driver with an additional source of recovery; however, to allow stacking of a victim's fleet policy onto the nonfleet policy of the insured-tortfeasor is a result contemplated neither by the insurer when it wrote the fleet policy nor the legislature when it wrote the statute. We therefore hold that under N.C.G.S. § 20-279.21(b)(4) fleet policies may not be stacked onto nonfleet policies.

*Watson*, 106 N.C. App. at 686, 417 S.E.2d at 818.

This Court granted discretionary review of *Watson* and affirmed the Court of Appeals' decision on grounds different from those articulated by the Court of Appeals. *Watson v. American Nat'l Fire Ins. Co.*, 333 N.C. 338, 425 S.E.2d 696 (1993). We determined that the insurance policy at issue was exempt, via N.C.G.S. § 20-279.32, from the requirements of the Financial Responsibility Act, since the vehicle involved was operating under a certificate of convenience and necessity issued by the Interstate Commerce Commission. Accordingly, the plaintiff was entitled to "only such coverage as is provided in the policy." *Id.* at 340, 425 S.E.2d at 697. We noted that "[b]y its plain words N.C.G.S. § 20-279.32 says that N.C.G.S. § 20-279.21(b)(4) does not apply in this case." *Id.* The present case differs from *Watson* because N.C.G.S. § 20-279.21(b)(4) is applicable.

**[1]** This Court stated clearly in *Sutton v. Aetna Casualty & Surety Co.*, 325 N.C. 259, 382 S.E.2d 759, *reh'g denied*, 325 N.C. 437, 384 S.E.2d 546 (1989), that no reason exists to distinguish between fleet and nonfleet policies under interpolicy stacking. Accordingly, we disavow the language of the Court of Appeals in *Watson* that the stacking provisions of N.C.G.S. § 20-279.21(b)(4) cover only nonfleet vehi-

cle insurance. Under *Sutton*, the interpolicy stacking of fleet and non-fleet policies is permissible. Therefore, the Court of Appeals erred by relying on its holding in *Watson* in holding that the coverage sought by the Isenhours was barred.

**[2]**   We now proceed to the second issue, which is a matter of first impression for this Court. The issue is whether a multiple-coverage fleet insurance policy which includes umbrella coverage must offer UIM coverage equal to the liability limits under its umbrella coverage section.

We begin by looking at the nature and purpose of umbrella coverage. It is a form of insurance protection against losses in excess of the amount covered by other liability insurance policies. It provides coverage above basic or normal limits of liability. *Black's Law Dictionary* 808 (6th ed. 1990). The umbrella portion of the policy in this case, for example, provides in the insuring agreement that the insurer will pay for loss in excess of coverage provided in any underlying insurance; coverage provided in any other insurance available to an insured; and in the absence of such coverage, the retention shown in the declarations in the policy. As noted by John A. and Jean Appleman:

> Umbrella policies serve an important function in the industry. In this day of uncommon, but possible, enormous verdicts, they pick up this exceptional hazard at a small premium. Assuming one's automobile . . . polic[y] [has] liability limits of $100,000 or even $500,000, the umbrella policy may pick up at that point and cover for an additional million, five million, or ten million.

8C Appleman, *Insurance Law and Practice* § 5071.65 (1981).

Our analysis in this case is aided by a very recent decision of the New Jersey Supreme Court, which noted a split of authority among courts considering the issue. *See Doto v. Russo*, 140 N.J. 544, 659 A.2d 1371 (1995). States with statutes requiring insurers to write UM/UIM coverage only to the statutory minimum of liability coverage have held that such statutes do not apply to umbrella provisions. *See Continental Ins. Co. v. Howe*, 488 So. 2d 917 (Fla. Dist. Ct. App.) (construing Rhode Island law), *disc. rev. denied*, 494 So. 2d 1151 (Fla. 1986); *Moser v. Liberty Mut. Ins. Co.*, 731 P.2d 406 (Okla. 1986). The Kansas Supreme Court has noted that the rationale behind this position is that the amount of liability coverage is irrelevant if UM/UIM

ISENHOUR v. UNIVERSAL UNDERWRITERS INS. CO.

[341 N.C. 597 (1995)]

coverage is only required in a minimum amount and that minimum is met. *See Bartee v. R.T.C. Transp., Inc.*, 245 Kan. 499, 511, 781 P.2d 1084, 1092 (1989).

On the other hand, states with statutes requiring UM/UIM coverage limits equal to those of liability coverage have held that such statutes are applicable to umbrella provisions. *See St. Paul Fire and Marine Ins. Co. v. Gilmore*, 168 Ariz. 159, 812 P.2d 977 (1991); *Chicago Ins. Co. v. Dominguez*, 420 So. 2d 882 (Fla. Dist. Ct. App. 1982), *disc. rev. denied*, 430 So. 2d 450 (Fla. 1983); *First State Ins. Co. v. Stubbs*, 418 So. 2d 1114 (Fla. Dist. Ct. App. 1982), *disc. rev. denied*, 426 So. 2d 26 (Fla.) *and disc. rev. denied*, 426 So. 2d 29 (Fla. 1983); *Cohen v. American Home Assur. Co.*, 367 So. 2d 677 (Fla. Dist. Ct. App.), *cert. denied*, 378 So. 2d 342 (Fla. 1979); *Bartee v. R.T.C. Transp., Inc.*, 245 Kan. 499, 781 P.2d 1084; *Southern Am. Ins. Co. v. Dobson*, 441 So. 2d 1185 (La. 1983); *Doto v. Russo*, 140 N.J. 544, 659 A.2d 1371; *House v. State Auto. Mut. Ins. Co.*, 44 Ohio App. 3d 12, 540 N.E.2d 738, *appeal dismissed*, 37 Ohio St. 3d 704, 531 N.E.2d 1316 (1988); *Cincinnati Ins. Co. v. Siemens*, 16 Ohio App. 3d 129, 474 N.E.2d 655 (1984) (Table No. 88-659).

Our analysis is further aided by a decision of the United States District Court for the Northern District of Ohio which construed North Carolina law with regard to the issue of whether an excess liability umbrella policy must offer UM/UIM coverage. In *Krstich v. United Services Auto. Ass'n*, 776 F. Supp. 1225 (N.D. Ohio 1991), the court found that the umbrella policy at issue "would be required to provide uninsured coverage under [North Carolina] law," since the policy was "a 'policy of bodily injury liability insurance' which covers 'liability arising out of the ownership, maintenance, or use' of a motor vehicle." *Id.* at 1234 (quoting N.C.G.S. § 20-279.21(b)(3) (Supp. 1988)). The court concluded that "[b]y operation of § 20-279.21(b)(3), it must, therefore, provide uninsured motorist coverage." *Id.* The court further concluded that the defendant was obligated to "provide underinsured motorist coverage 'in an amount equal to the policy limits for automobile bodily injury liability as specified in the owner's policy,' " since the umbrella policy therein "exceed[ed] the limits of subsection (b)(2) and . . . contain[ed] uninsured coverage as required by subsection (b)(3)." *Id.* (quoting N.C.G.S. § 20-279.21(b)(4)). The court found that "[u]nderinsured coverage is, therefore, mandatory in the amount of the liability policy's limit, here $1,000,000, pursuant to subsection (b)(4)." *Id.*

**ISENHOUR v. UNIVERSAL UNDERWRITERS INS. CO.**

[341 N.C. 597 (1995)]

Under our statute, the policyholder is entitled to UM/UIM coverage only if the policyholder elects liability coverage above the statutory minimum. *See* N.C.G.S. § 20-279.21(b)(3), (b)(4). In *Sutton*, we said that "[a]n owner's policy of liability insurance must, subject to rejection by the insured, provide UIM coverage 'only with policies that are written at limits that exceed' minimum statutory limits and that afford uninsured motorist coverage." *Sutton*, 325 N.C. at 268, 382 S.E.2d at 765 (quoting N.C.G.S. § 20-279.21(b)(4) (Supp. 1988)). Under the version of our statute applicable to this case, if these statutory prerequisites for UIM coverage are met, the policyholder is entitled to UIM coverage "in an amount equal to the policy limits for automobile bodily injury liability as specified in the owner's policy."[1] N.C.G.S. § 20-279.21(b)(4) (Supp. 1988). Because the statute links the amount of UIM coverage to the amount of liability coverage, the increase of liability coverage through umbrella coverage provisions will naturally cause an insurer to offer UIM coverage in a higher amount. This result is in accord with the manifest purpose of the Financial Responsibility Act in North Carolina, which is to protect innocent victims who have been injured by financially irresponsible motorists. *Nationwide Mut. Ins. Co. v. Chantos*, 293 N.C. 431, 238 S.E.2d 597 (1977).

Accordingly, we hold that Universal was required to offer Far East Motors UIM coverage in the umbrella section of the fleet policy. The umbrella coverage section of the policy provided automobile bodily injury liability coverage in the amount of $2,000,000. Therefore, Universal was required to offer Far East Motors $2,000,000 in UIM coverage.

When a statute is applicable to the terms of an insurance policy, the provisions of the statute become a part of the policy, as if written into it. If the terms of the statute and the policy conflict, the statute prevails. *Sutton*, 325 N.C. 259, 382 S.E.2d 759; *Chantos*, 293 N.C. 431, 238 S.E.2d 597.

Under N.C.G.S. § 20-279.21(b)(4), the UIM coverage is the same as the policy limits for automobile liability unless the insured has rejected such insurance or selected a different limit, and this rejection or selection must be in writing. *Proctor v. N.C. Farm Bureau Mut. Ins. Co.*, 324 N.C. 221, 376 S.E.2d 761 (1989).

---

1. This statute has been amended, and now requires an insurer to offer UIM coverage in an amount "equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy." N.C.G.S. § 20-279.21(b)(4) (1992).

In the present case, there is no evidence in the record[2] that Far East Motors either rejected in writing UM or UIM coverage for the umbrella section of the policy or selected a different limit. Therefore, the umbrella section of the policy provides UIM coverage of $2,000,000, "an amount equal to the policy limits for automobile bodily injury liability as specified in the owner's [umbrella coverage section of the] policy," N.C.G.S. § 20-279.21(b)(4); *accord Proctor*, 324 N.C. 221, 376 S.E.2d 761.

**[3]** Under N.C.G.S. § 20-279.21(b)(3) and (b)(4), there are two classes of "persons insured":

> (1) the named insured and, while resident of the same household, the spouse of the named insured and relatives of either and (2) any person who uses with the consent, express or implied, of the named insured, the insured vehicle, and a guest in such vehicle.

*Smith v. Nationwide Mut. Ins. Co.*, 328 N.C. 139, 143, 400 S.E.2d 44, 47, *reh'g denied*, 328 N.C. 577, 403 S.E.2d 514 (1991). Members of the first class are "persons insured" for purposes of UM/UIM coverage regardless of whether the insured vehicle is involved in their injuries. *Id.* Members of the second class are "persons insured" only when the insured vehicle is involved in the insured's injuries. *Id.*

Turning to the present case, there is no contention that the Isenhours are persons insured of the first class under the Universal policy. The question becomes whether the Isenhours are "persons insured" of the second class under the UIM provisions of the Far East Motors fleet policy with Universal. It is undisputed that Mr. Isenhour was occupying a covered automobile owned by Far East Motors, the insured, and that Mr. Isenhour was using the automobile with the permission of Far East Motors when he was struck by the automobile driven by Ms. Clark. Thus, Mr. Isenhour is a person insured of the second class for UIM purposes and, accordingly, is entitled to coverage under the umbrella section of the fleet policy pursuant to N.C.G.S. § 20-279.21(b)(3) and (b)(4).

However, Mrs. Isenhour was not a person insured of the second class under the Universal policy. She was neither using the insured vehicle nor a guest in the vehicle at the time of the accident. Therefore, she is not entitled to UIM coverage under the Universal policy.

---

2. This Court denied defendants' motion, made for the first time in this Court, to amend the record on appeal by introducing evidence of a purported rejection of such coverage by Far East Motors.

[4] The final issue on this appeal is whether Mr. Isenhour's failure to exhaust the UIM limits of his Nationwide policy precludes his claim against Universal. The Universal fleet policy providing UIM coverage contained the following clause in its endorsement:

### MOST WE WILL PAY

We will pay under this endorsement only after the limits of any other applicable insurance policies or bonds have been exhausted by payment of judgments or settlements.

Universal contends that because Mr. Isenhour failed to claim all of the available UIM coverage under the Nationwide policy, he should be precluded from recovery under the Far East Motors policy. The Isenhours entered into a settlement agreement for $50,000 of liability coverage under the tort-feasor's Nationwide policy and $25,000 of UIM coverage under their personal Nationwide policy. The agreement purported to release the tort-feasor from any and all liability and further released Nationwide from any UIM claims by the Isenhours. Defendants here contend that because the Isenhours did not exhaust the limits of their UIM coverage under their Nationwide policy in the settlement agreement, Mr. Isenhour should not be allowed any recovery pursuant to the above endorsement.

We do not agree with Universal's contentions. The exhaustion requirement in Universal's "Most We Will Pay" clause relates to "applicable" insurance policies or bonds, such as liability insurance or UIM coverage of a lower tier than the insurance in question. Universal's obligation to pay under its UIM coverage does not arise until all sums available under any liability policies or bonds and any other UIM coverage which is of a lower tier has been exhausted. Universal does not argue that any liability policies and bonds have not been exhausted, but contends that the competing Nationwide UIM limits have not been exhausted. We agree, but this does not decide the issue before us.

In deciding this issue, we must first determine which policy provides primary coverage. If one policy provides primary coverage while the other provides excess coverage, then we must determine whether the primary policy is sufficient to satisfy Mr. Isenhour's $750,000 judgment. If the primary policy limits are sufficient to fully satisfy the judgment, no stacking issue arises in this case. On the other hand, if the policy providing primary coverage is not sufficient to satisfy the judgment, the fact that one policy is fleet and the other

nonfleet would not prohibit stacking the primary and excess coverage under the two policies so as to provide full payment of the judgment. *See Sutton*, 325 N.C. 259, 382 S.E.2d 759.

Here, we have two policies providing UIM coverage issued by different companies to different policyholders. "The liability of each company must be determined by the terms of its own policy, subject to such modification as may be imposed by statute or by authorized administrative regulation or order." *Insurance Co. v. Insurance Co.*, 269 N.C. 341, 346, 152 S.E.2d 436, 440 (1967). To determine who is the primary carrier and who is the excess carrier, if any, we must examine the "Other Insurance" clauses in the competing policies. *Id.*

The Universal policy issued to Far East Motors provides in pertinent part:

### OTHER INSURANCE

The insurance afforded by the endorsement is primary, except it is excess for any COVERED AUTO not owned by the INSURED or any trailer attached to it.

Based on the plain language of the Far East Motors Universal policy, it provides primary coverage because the automobile that Mr. Isenhour was driving at the time of the accident was a covered automobile owned by Universal's insured, Far East Motors.

The Nationwide policy issued to the Isenhours provides in pertinent part:

### OTHER INSURANCE

. . . .

[A]ny insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

Based on the plain language of the Isenhours' Nationwide policy, it provides excess coverage in this case, since the automobile Mr. Isenhour was driving at the time of the accident was not owned by him.

Accordingly, we hold that Far East Motors' Universal policy provides primary coverage and the Isenhours' Nationwide policy provides secondary coverage. Therefore, the liability of Nationwide, the excess insurer, does not arise until the limits of the Universal policy,

the primary coverage policy, have been exceeded. *See Insurance Co. v. Insurance Co.*, 269 N.C. 341, 152 S.E.2d 436.

In support of its contention that Mr. Isenhour is precluded from recovery, Universal here cites *Eaves v. Universal Underwriters Group*, 107 N.C. App. 595, 421 S.E.2d 191, *disc. rev. denied*, 333 N.C. 167, 424 S.E.2d 908 (1992). In *Eaves*, Universal's garage liability policy contained a "Most We Will Pay" clause limiting its coverage to the minimum limits of the Financial Responsibility Act and an "Other Insurance" clause purporting to make its coverage excess over any other collectible insurance, while the competing policy issued by Amica Mutual Insurance Company also contained an "Other Insurance" clause purporting to make its coverage excess for any vehicle the insured did not own where other insurance was available. Because Universal's policy effectively defined its policy limits to exclude liability in the event there was other collectible insurance which met the minimum standards set by the Financial Responsibility Act, the Court of Appeals held that Universal did not provide any coverage to the plaintiffs in that case.

In *Eaves*, the Court of Appeals relied on *United Services Auto. Ass'n v. Universal Underwriters Ins. Co.*, 332 N.C. 333, 420 S.E.2d 155 (1992). In *United Services*, this Court examined two policies to determine which of them provided liability coverage for the accident in question. In that case, it was "apparent that in defining the limits for which it would be liable for an occurrence involving a person required by law to be insured, Universal agreed to cover only what was needed to comply with the financial responsibility law." *Id.* at 336, 420 S.E.2d at 157. This Court concluded that because United Services provided the coverage required to comply with the Financial Responsibility Act, the Universal policy did not provide any coverage in that case.

The present case is distinguishable from both *Eaves* and *United Services*. In the present case, both Universal and Nationwide contracted to provide coverage under the circumstances of this case, notwithstanding the fact that one is primary and the other secondary. Further, unlike *United Services* and *Eaves*, Universal here did not define its policy limits to exclude liability in the event there was other collectible insurance which met the minimum standards set by the Financial Responsibility Act. Accordingly, neither *United Services* nor *Eaves* is dispositive in this case. Therefore, we reject Universal's

contention that it was not required to pay until the Nationwide UIM policy limits were exhausted.

Since the policy limits available in the Universal policy are sufficient to satisfy Mr. Isenhour's portion of the judgment, this is not a stacking case. This case involves a question of coverage. The primary coverage under the Universal policy exceeds the judgment of $750,000 in Mr. Isenhour's favor. Therefore, Mr. Isenhour could satisfy his entire judgment without resorting to the Nationwide policy.

Thus, Universal is not absolved of liability simply because the Isenhours settled with Nationwide for less than the UIM policy limits. Accordingly, we hold that Mr. Isenhour is entitled to satisfy his portion of the judgment from the Universal policy.

For the foregoing reasons, the decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further remand to the trial court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.