PROGRESSIVE AMERICAN INSURANCE COMPANY, a Corporation, Plaintiff v. FRANCISCO VASQUEZ, JAVIER LUNA, TYVOLIA FAISON, Administrator of the Estate of Daryell Glen Carlisle, VIRGINIA LASSITER, Administrator of the Estate of Amos H. Bryant, NORMAN JOHNSON, JR., WILLIAM T. PARKER, T.A. LOVING, INC., a Corporation, and AETNA CASUALTY & SURETY COMPANY, a Corporation, Defendants

No. COA97-976

(Filed 16 June 1998)

1. **Insurance § 529 (NCI4th)— underinsured motorist coverage—excess umbrella policy**

   The trial court correctly concluded that an excess umbrella policy provides underinsured motorist coverage in addition to the underinsured coverage already provided by the underlying business auto policy. The UIM coverage was not specifically rejected by the insured and the policy provided coverage for "bodily injury"; under *Piazza v. Little*, 129 N.C. App. 77, an umbrella policy which provides "bodily injury liability insurance" must provide UIM coverage pursuant to the mandate of N.C.G.S. § 20-279.21.

2. **Insurance § 528 (NCI4th)— UIM coverage—workers' compensation payments—no limitation of liability in policy—no reduction of UIM**

   The amount of underinsured motorist coverage under an umbrella policy was not reduced by amounts paid or payable under workers' compensation where there was no explicit limitation of liability in the umbrella policy providing for reduction of UIM coverage by amounts paid by a workers' compensation carrier. N.C.G.S. § 20-279.21(e) does not mandate that UIM coverage be reduced by the amount of workers' compensation benefits, but instead allows for the insured to limit liability by appropriate language in the contract of insurance.

**3. Insurance § 528 (NCI4th)— UIM coverage—excess umbrella policy—multiple claimants—limit of coverage**

In an action arising from a motor vehicle accident, the UIM coverage under an umbrella policy provided $20,000,000 in coverage for all claims, the highest limit of bodily injury liability available for any one vehicle under the policy. There was no evidence in the record that the insured either rejected UIM coverage or selected a different coverage limit as contemplated by N.C.G.S. § 20-279.21.

**4. Insurance § 528 (NCI4th)— UIM coverage—umbrella policy—maximum coverage—per accident basis**

In an action arising from a motor vehicle accident, the UIM coverage under an umbrella policy applied on a per accident basis. To find otherwise would leave open the possibility of openended coverage far beyond the contemplation of the parties and the risk undertaken by the insurer; however, the parties to the insurance contract may make clear in the policy's terms just what limits apply, so long as the language does not conflict with the mandate of the Financial Responsibility Act.

**5. Insurance § 528 (NCI4th)— UIM coverage—business auto policy—maximum coverage—per accident basis**

In an action arising from a motor vehicle collision, the trial court correctly concluded that the statutory maximum UIM coverage of the underlying business auto policy applied on a per accident basis. In addition to the reasons stated above, the policy here explicitly states that the limit applies on a per accident basis.

**6. Insurance § 528 (NCI4th)— UIM coverage—business auto policy—workers' compensation and primary carrier coverage—reduction of business auto policy coverage**

In an action arising from a motor vehicle collision, the trial court properly concluded that the amount of the business auto policy UIM coverage should be reduced by the amount of primary carrier liability plus the aggregate amounts paid or payable as workers' compensation benefits to all claimants. The policy is clear and unambiguous that any amount payable under the BAP is reduced by all workers' compensation benefits paid or payable for the accident and by the amount paid by the tortfeasor's liability carrier, and these provisions are authorized by N.C.G.S. § 20-279.21(b)(4) and (e). Maximum coverage is calculated on a per accident basis.

Appeal by defendant Aetna Casualty and Surety Company and cross appeal by defendants Tyvolia Faison, Virginia Lassiter, Norman Johnson, Jr., and William T. Parker from order entered 3 April 1997 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 31 March 1998.

This declaratory judgment action arises out of a truck collision that occurred on 8 July 1994. In the 8 July 1994 accident, a flatbed truck owned by Francisco Vasquez and driven by Javier Flores Luna collided with a pickup truck owned by T. A. Loving, Inc. and driven by Loving's employee, Daryell Glenn Carlisle. Amos H. Bryant, Norman Johnson, Jr., and William T. Parker were passengers in the pickup truck and were also employed by Loving. Carlisle and Bryant were killed and Johnson and Parker suffered personal injuries. Carlisle, Bryant, Johnson and Parker were employed by T. A. Loving, Inc., the owner of the pickup truck. The estates and individuals have received workers' compensation benefits under a workers' compensation policy issued to T. A. Loving, Inc. by defendant Aetna Casualty and Surety Company ("Aetna"). The estates and individuals ("the claimants") have also received $250,000 under primary liability coverage from plaintiff Progressive American Insurance Company ("Progressive American"). The employees and their estates now seek underinsured motorist coverage ("UIM") under a business auto policy ("BAP") and an excess policy issued to T. A. Loving, Inc. by Aetna.

Progressive American filed this declaratory judgment action on 1 June 1995. Aetna filed an answer and cross-claim for declaratory judgment against defendants Tyvolia Faison, Administrator of the Estate of Daryell Glen Carlisle, Flora Maye Bryant, Administrator of the Estate of Amos H. Bryant, Johnson and Parker, on 19 March 1996. Aetna moved for summary judgment on 23 August 1996.

Following a hearing on 21 February 1997, the trial court entered summary judgment on 3 April 1997. In its order, the trial court determined that Aetna's business auto policy provides $1,000,000.00 in underinsured motorist coverage "for the aggregate of all claims and all claimants" arising out of the accident. The trial court also held that this obligation is reduced by the amount of primary carrier liability coverage paid by Progressive American and by "the aggregate amounts paid or payable under any workers' compensation policy to all claimants." The trial court further held that Aetna's excess liability policy provides additional underinsured motorist coverage in the amount of $1,000,000.00 for all claims. The trial court also determined

that the $1,000,000.00 from the Aetna excess liability policy is not reduced by any workers' compensation payments made to the claimants. Both Aetna and the claimants appeal.

> *Womble, Carlyle, Sandridge & Rice, by Richard T. Rice and Alison R. Bost, for defendant-appellant Aetna Casualty & Surety Company.*

> *Yates, McLamb & Weyher, L.L.P., by Andrew A. Vanore, III, for defendant-appellant Aetna Casualty & Surety Company.*

> *Barnes, Braswell & Haithcock, P.A., by Glenn A. Barfield, for defendant-appellant Norman Johnson, Jr.*

> *Jonathan S. Williams, P.C., by Jonathan S. Williams, for defendant-appellant William T. Parker.*

> *Mast, Schulz, Mast, Mills & Stem, P.A., by David F. Mills, for defendant-appellant Tyvolia Faison.*

> *Whitley, Jenkins & Riddle, by Eugene Jenkins, for defendant-appellant Virginia Lassiter.*

EAGLES, Chief Judge.

## Aetna's Appeal

### I.

[1] We first consider whether the trial court erred in holding that the excess umbrella policy provides underinsured motorist coverage in addition to the underinsured motorist coverage already provided by the underlying business auto policy. Aetna argues that the umbrella policy does not expressly provide for UIM coverage and that UIM coverage, therefore, can only exist in the umbrella policy if it is read into the policy through G.S. 20-279.21, the Financial Responsibility Act ("the FRA"). Aetna contends that the FRA allows a maximum of $1,000,000.00 in UIM coverage with any one insurer, and that the maximum amount was provided in the underlying policy. Aetna urges that *Isenhour v. Universal Underwriters Ins. Co.*, 341 N.C. 597, 461 S.E.2d 317, *reh'g denied*, 342 N.C. 197, 463 S.E.2d 237 (1995), *appeal after remand*, 345 N.C. 151, 478 S.E.2d 197 (1996), does not require additional UIM coverage under an excess policy. Aetna further argues that the excess coverage is voluntary and not subject to the FRA. Finally, Aetna argues that because the umbrella coverage addresses a risk different from the risk addressed by primary motor vehicle cov-

erage, the FRA should not apply. Accordingly, Aetna argues that the trial court should be reversed.

The claimants argue that pursuant to the Supreme Court's decision in *Isenhour*, the umbrella policy is subject to the FRA and must be applied separately from the underlying policy to determine the existence and amount of UIM coverage.

This Court recently determined that an umbrella policy which provided "bodily injury liability insurance" must also provide UIM coverage pursuant to the mandate of the FRA. *Piazza v. Little*, 129 N.C. App. 77, 81, 497 S.E.2d 429, 431 (1998). Since UIM coverage was not specifically rejected by the insured, and the policy provides coverage for "bodily injury," we hold that the umbrella policy provides UIM coverage and that the UIM coverage provided by the umbrella policy is in addition to the coverage provided by the underlying BAP. Accordingly, the trial court's order concluding that the umbrella policy provides UIM coverage is affirmed.

## II.

[2] We next consider whether the trial court erred in holding that the umbrella policy provides underinsured motorist coverage in an amount that is not reduced by amounts paid or payable to the claimants under workers' compensation. Aetna argues that G.S. 20-279.21(e) mandates a reduction of coverage to the extent Aetna has paid benefits under its workers' compensation policy. *See Brantley v. Starling*, 336 N.C. 567, 572, 444 S.E.2d 170, 172 (1994). The claimants argue that the statute does not mandate a reduction but merely permits a reduction. Claimants distinguish *Brantley* by arguing that the insurance policies in *Brantley* included policy provisions specifically limiting liability, as permitted by G.S. 20-279.21(e). Accordingly, claimants argue that the assignment of error should be overruled.

With regard to reduction of UIM coverage, G.S. 20-279.21(e) states that "[s]uch motor vehicle liability policy *need not insure* against loss from any liability for which benefits are in whole or in part either payable or required to be provided under any workers' compensation law . . . ." (Emphasis added). This statute does not mandate that UIM coverage be reduced by the amount of workers' compensation benefits, but instead allows for the insurer to limit liability by appropriate language in the contract of insurance. *See Brantley*, 336 N.C. App. at 567, 444 S.E.2d at 170 and *Manning v. Fletcher*, 324 N.C. 513, 379 S.E.2d 854, *reh'g denied*, 325 N.C. 277, 384

S.E.2d 517 (1989), *appeal after remand,* 102 N.C. App. 392, 402 S.E.2d 648, *review allowed,* 329 N.C. 497, 407 S.E.2d 857 (1991), *aff'd,* 331 N.C. 114, 413 S.E.2d 798 (1992). Here, there was no explicit limitation of liability in the umbrella policy providing for the reduction of UIM coverage by amounts paid by a workers' compensation carrier. Accordingly, we hold that the amount of UIM coverage here is not reduced by the amount paid or payable under the workers' compensation policy. The assignment of error is overruled.

### Claimants' Cross-Appeal

### III.

[3] We next consider whether the trial court erred by concluding that the umbrella policy provided only one million dollars in UIM coverage for all claims arising out of the 8 July 1994 accident in addition to that provided by the underlying business auto policy. The claimants argue that the trial court erred in limiting the amount of coverage to $1,000,000.00 for all claims and all claimants. Claimants first contend that there should be UIM coverage in the amount of $20,000,000.00 since that was the highest limit of bodily injury liability available for any one vehicle under the policy. The claimants next contend that maximum coverage should be applied on a per person basis, rather than on a per accident basis. The claimants argue that because "the legislature is conspicuously silent concerning the operation of the statute upon multiple claimants injured in one occurrence, liberal construction compels the conclusion that the coverage afforded under this statute is per person." Additionally, the claimants assert that the statute should be read " 'to provide the innocent victim with the *fullest possible protection.*' " *Metropolitan Property and Casualty Ins. Co. v. Caviness,* 124 N.C. App. 760, 764, 478 S.E.2d 665, 668 (1996) (quoting *Proctor v. N.C. Farm Bureau Mutual Ins. Co.,* 324 N.C. 221, 225, 376 S.E.2d 761, 764 (1989)) (emphasis added). The claimants contend that the "fullest possible protection" would be afforded here if the statute is interpreted to provide UIM coverage in the amount of $20,000,000.00 per claimant. Aetna argues that coverage should be limited to a maximum of $1,000,000.00 for all claims.

After careful consideration of the record, briefs and contentions of the parties, we reverse and hold that the umbrella policy provides $20,000,000.00 in coverage for all claims. G.S. 20-279.21(b)(4) provides that motor vehicle liability policies "[s]hall . . . provide underinsured motorist coverage in an amount . . . [not] greater than one million dollars ($1,000,000) *as selected by the policy owner.*" (Emphasis

added). Here, the policy owner made no selection of any amount. G.S. 20-279.21(b)(4) provides that "[i]f the named insured does not reject underinsured motorist coverage and does not select different coverage limits, the amount of underinsured motorist coverage shall be equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy." There was no evidence in the record here that the insured either rejected UIM coverage or selected a different coverage limit as contemplated by G.S. 20-279.21. Accordingly, we hold that UIM coverage under the umbrella policy is "equal to the highest limit of bodily injury liability coverage for any one vehicle in the policy," which is $20,000,000.00. G.S. 20-279.21(b)(4). *See Isenhour*, 341 N.C. at 606, 461 S.E.2d at 322. This result is also in accord with the "underlying purpose" of the FRA which, "as acknowledged by our Supreme Court, 'is best served when the statute is interpreted to provide the innocent victim with the *fullest possible protection*.' " *Caviness*, 124 N.C. App. at 764, 478 S.E.2d at 668 (quoting *Proctor*, 324 N.C. at 225, 376 S.E.2d at 764) (emphasis added).

[4] While we hold that the umbrella policy provides $20,000,000.00 of UIM coverage, we disagree with claimants and conclude that the coverage applies on a per accident basis. The FRA is not explicit as to whether the coverage maximum should apply on a per person basis or a per accident basis. However, G.S. 20-279.5(c) provides that the minimum coverage applicable is $25,000.00 per person and $50,000.00 per accident. Accordingly, the maximum coverage should similarly be determined to be a per person, per accident limit. To find otherwise would leave open the possibility of open ended coverage far beyond the contemplation of the parties and beyond the risk undertaken by the insurer. In accidents involving multi-passenger vehicles there often are numerous injured passengers. If the maximum coverage were to be applied on a per person basis rather than on a per accident basis, an accident injuring multiple passengers could require much greater coverage than the limits intended by the parties. The parties to the insurance contract may make clear in the policy's terms just what limits apply, so long as the policy language does not conflict with the mandate of the FRA. Accordingly, we hold that umbrella policy here provides a maximum of $20,000,000.00 of UIM coverage per accident.

IV.

[5] We next consider whether the trial court erred in concluding that the business auto policy provides only $1,000,000.00 in UIM coverage

for all claims. Claimants argue that the business auto policy here should also provide $1,000,000.00 in coverage per claimant. Aetna argues that the trial court did not err in concluding that the BAP provides only $1,000,000.00 per accident. The BAP explicitly, by its terms, provides that its coverage applies on a per accident basis, stating that "the company shall not be liable for amounts in excess of $1,000,000 for each accident." The FRA does not specifically address whether the $1,000,000.00 cap applies on a per person or per accident basis. However, Aetna argues that "the statutory maximum UIM limit is expressed in terms of coverage available for the vehicle involved in the accident, not each person in it." Accordingly, Aetna contends that the BAP complies with the FRA and its terms should control.

For the same reasons stated in Part III supra, we hold that the statutory maximum coverage applies on a per accident basis and affirm the trial court's holding. We also find that the BAP explicitly states that the policy limit applies on a per accident basis. Where the policy language does not conflict with the language of the statute, the language of the policy should control. *Lanning v. Allstate Ins. Co*, 332 N.C. 309, 312, 420 S.E.2d 180, 182 (1992).

V.

**[6]** Finally we consider whether the trial court erred in reducing the business auto policy coverage payable by the amount of primary carrier liability plus the aggregate amounts paid or payable as workers' compensation benefits to all claimants. The claimants contend that the trial court erred in reducing the Aetna business auto policy coverage by the amount of primary carrier liability coverage paid by Progressive American, and then further reducing the Aetna coverage by the aggregate amounts paid or payable to all claimants under any workers' compensation policy. Claimants argue that *Manning*, 102 N.C. App. at 400, 402 S.E.2d at 652 held that the amount of primary coverage cannot be added to the workers' compensation offset to determine the remaining UIM coverage. Claimants also argue that the trial court further erred when it aggregated the total of workers' compensation payments made to all claimants as a credit against UIM coverage, because, they argue, multiple claimants are not contemplated by the FRA. Accordingly, claimants argue that this Court should reverse the provisions in the trial court's order which stacks the individual workers' compensation benefits received by the claimants when calculating the sum to credit against Aetna's UIM coverages. Aetna argues that the BAP provides that any amount payable

PROGRESSIVE AMERICAN INS. CO. v. VASQUEZ

[129 N.C. App. 742 (1998)]

under the BAP coverage is reduced by all workers' compensation benefits paid or payable for the accident at issue and by the amount paid by the tortfeasor's liability carrier. Aetna further argues that these policy provisions are authorized by the FRA. Aetna also contends that *Manning* is not controlling because the claimants here have retained the amount paid by the primary liability insurer rather than reimburse the workers' compensation lien.

After careful consideration of the record, briefs and contentions of both parties, we affirm. The policy is clear and unambiguous that any amount payable under the BAP is reduced by all workers' compensation benefits paid or payable for the accident and by the amount paid by the tortfeasor's liability carrier. These provisions are authorized by G.S. 20-279.21(b)(4) and (e). Petitioner's argument that the trial court erred in aggregating the total workers' compensation payments made to all the claimants as a credit against UIM coverage is moot. Plaintiff's argument was that each claimants UIM coverage should be reduced only by payments made to that particular claimant. However, plaintiff's argument was dependent on our finding that coverage is supplied on a per person basis. As we have stated, maximum coverage is calculated on a per accident basis. Accordingly, it was proper for the court to aggregate worker's compensation payments made to all the claimants as a credit against UIM coverage.

In sum, we hold that the umbrella policy provides UIM coverage in the amount of $20,000,000.00 per accident. The BAP provides UIM coverage in the amount of $1,000,000.00 per accident. UIM coverage in the umbrella policy is not automatically reduced by the amount paid or payable under the workers' compensation policy because no limitation of liability provision providing for reduction was included in the policy. Finally, the amount payable under the BAP is reduced by the total of all workers' compensation benefits paid or payable for the accident and by the amount paid by the tortfeasor's liability carrier, because the policy's language explicitly provided for reduction pursuant to G.S. 20-279.21(b)(4) and (e).

Affirmed in part, reversed in part.

Judges JOHN and TIMMONS-GOODSON concur.