PROGRESSIVE AMERICAN INS. CO. v. VASQUEZ

[350 N.C. 386 (1999)]

PROGRESSIVE AMERICAN INSURANCE COMPANY, a Corporation v. FRANCISCO VASQUEZ, JAVIER LUNA, TYVOLIA FAISON, Administrator of the Estate of Daryell Glen Carlisle, VIRGINIA LASSITER, Administrator of the Estate of Amos H. Bryant, NORMAN JOHNSON, JR., WILLIAM T. PARKER, T.A. LOVING, INC., a Corporation, and AETNA CASUALTY & SURETY COMPANY, a Corporation

No. 286PA98

(Filed 9 June 1999)

1. **Insurance— excess liability policy—UIM coverage not required**

The Financial Responsibility Act does not require a commercial excess liability policy to offer separate uninsured and underinsured motorist coverage pursuant to N.C.G.S. § 20-279.21(b)(3) and (b)(4) in addition to what is offered in the underlying business automobile policy. Where there are separate and distinct excess liability and underlying policies, UIM coverage is not written into the excess liability policy by operation of law and only exists if it is provided by the contractual terms of the excess policy.

2. **Insurance— business automobile policy—UIM coverage per accident—reduction for workers' compensation and tortfeasor's liability payment**

A business automobile policy's UIM coverage limit of $1,000,000 applied per accident rather than per claimant. Further, the insurer's maximum UIM liability under the policy was properly reduced by the aggregate of workers' compensation benefits paid or payable to all claimants for the accident and by the amount paid to claimants by the tortfeasor's liability carrier. N.C.G.S. § 20-279.21(b)(3), (b)(4), and (e).

Justice FRYE dissenting.

Justice MARTIN joins in this dissenting opinion.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 129 N.C. App. 742, 502 S.E.2d 10 (1998), affirming in part and reversing in part an order entered by Stephens (Donald W.), J., on 3 April 1997 in Superior Court, Wake County. On 5 November 1998, the Supreme Court allowed conditional petitions for discretionary review as to additional issues. Heard in the Supreme Court 8 March 1999.

**PROGRESSIVE AMERICAN INS. CO. v. VASQUEZ**

[350 N.C. 386 (1999)]

*Barnes, Braswell & Haithcock, P.A., by Glenn A. Barfield, for defendant-appellant and -appellee Johnson; Mast, Schulz, Mast, Mills & Stem, P.A., by David F. Mills, for defendant-appellant and -appellee Faison; Law Offices of Jonathan S. Williams, by Jonathan S. Williams, for defendant-appellant and -appellee Parker; Whitley, Jenkins & Riddle, by Eugene G. Jenkins, for defendant-appellant and -appellee Lassiter.*

*Womble Carlyle Sandridge & Rice, PLLC, by Richard T. Rice and Garth A. Gersten, for defendant-appellant and -appellee Aetna Casualty and Surety Company.*

*Yates, McLamb & Weyher, L.L.P., by Andrew A. Vanore, III, for defendant-appellant and -appellee Aetna Casualty and Surety Company.*

*Battle, Winslow, Scott & Wiley, P.A., by Marshall A. Gallop, Jr., on behalf of the North Carolina Association of Defense Attorneys, amicus curiae.*

ORR, Justice.

In this case, we are asked to decide, *inter alia*, the threshold issue of whether N.C.G.S. § 20-279.21 of the Financial Responsibility Act requires a commercial excess liability policy to offer separate uninsured and underinsured motorist ("UM" and "UIM," respectively) coverage in addition to what is offered by the underlying policy.

On 1 April 1994, defendant Aetna Casualty & Surety Company (now known as Travelers Casualty and Surety Company) issued a "Business Auto Coverage Policy" ("BAP") and a separate "Commercial Excess Liability Insurance Policy" to "T.A. Loving Company." The BAP provided UIM coverage limits and bodily injury liability limits of $1,000,000 per accident. The excess liability policy provided a $20,000,000 limit of liability for bodily injury for any one occurrence arising out of third-party liability claims made against Loving in excess of the underlying limits. The excess liability policy referenced the BAP as the underlying insurance.

On 8 July 1994, Amos H. Bryant and Daryell Carlisle were killed and Norman Johnson, Jr., and William T. Parker were injured when a flatbed truck, owned by Francisco Vasquez and driven by Javier Luna, collided with a pickup truck owned by T.A. Loving, Inc., and driven by Carlisle, a Loving employee. Bryant, Johnson, and Parker were also Loving employees. Tyvolia Faison, administratrix of Carlisle's

estate; Virginia Lassiter, administratrix of Bryant's estate; Johnson; and Parker ("claimants") received $250,000 of primary liability coverage from plaintiff Progressive American Insurance Company ("Progressive American"), the liability insurer for Vasquez.

On 1 June 1995, Progressive American filed this action seeking a declaratory judgment that it had no obligation to defendants, under a policy issued to Vasquez by Progressive American which purported to cover the flatbed truck, with respect to any injuries or damages sustained in the accident. Defendant Aetna Casualty & Surety Company ("Aetna") filed an answer and cross-claim for declaratory judgment requesting, in part, a declaration that the excess liability policy issued by Aetna did not provide UM or UIM coverage above or in addition to that provided by the underlying auto policy.

Aetna subsequently filed a motion for summary judgment, which was heard at the 21 February 1997 session of Superior Court, Wake County. Although the trial court, in its "Memorandum Decision" of 4 March 1997 and its subsequent order of 3 April 1997, granted Aetna's motion for summary judgment, Aetna disagreed with that portion of the trial court's order regarding UIM coverage under the excess liability policy as set forth in the following conclusions of law:

2. The Aetna Business Auto Coverage Policy, number 25 FJ 1078005 CCA, provides One Million Dollars ($1,000,000.00) in underinsured motorist coverage for the aggregate of all claims and all claimants seeking recovery for wrongful death or personal injury arising out of a single incident. Under this policy, the maximum obligation of Aetna is a total of One Million Dollars ($1,000,000.00), reduced by the amount of primary carrier liability coverage paid by Progressive American Insurance Company, which amount is Two Hundred Fifty Thousand Dollars ($250,000.00). The net amount of Seven Hundred Fifty Thousand Dollars ($750,000.00) is further reduced by the aggregate amounts paid or payable under any workers' compensation policy to all claimants.

3. The Commercial Excess Liability Policy, Number 025 XS 23999348 CCA (the umbrella policy), provides additional underinsured motorist coverage, in addition to that provided in the auto coverage policy; however, the Court rules that such additional coverage is limited to One Million Dollars ($1,000,000.00) of excess coverage for underinsured motorist liability incurred, above the initial One Million Dollars ($1,000,000.00) coverage in

**PROGRESSIVE AMERICAN INS. CO. v. VASQUEZ**

[350 N.C. 386 (1999)]

the auto policy. This One Million Dollars ($1,000,000.00) limit is in the aggregate for all claims and all claimants; however, it is not reduced by any workers' compensation payments made to claimants.

Aetna and the claimant-defendants appealed the trial court's decision to the Court of Appeals.

The Court of Appeals, in a unanimous decision, reversed that part of the trial court's order limiting the level of UIM coverage under the excess liability policy to $1,000,000. Instead, the Court of Appeals held "that the umbrella policy [excess liability policy] provides UIM coverage in the amount of $20,000,000.00 per accident." *Progressive Am. Ins. Co. v. Vasquez*, 129 N.C. App. 742, 748, 502 S.E.2d 10, 15 (1998). We allowed Aetna's petition for discretionary review as to this issue.

[1] Claimants present two arguments as to why the Court of Appeals was correct in holding that the excess liability policy was required to offer UM/UIM coverage. First, they contend that the excess liability policy meets the statutory requirements of N.C.G.S. § 20-279.21. In essence, their argument is that N.C.G.S. 20-279.21(b)(3) refers to a "policy of bodily injury liability insurance," which constitutes a broader category of coverage than a motor vehicle liability policy. Thus, they argue, the excess liability policy was a "policy of bodily injury liability insurance," and therefore, UM and UIM coverage was required to be offered. Secondly, they contend that this Court's decision in *Isenhour v. Universal Underwriters Ins. Co.*, 341 N.C. 597, 461 S.E.2d 317 (1995), mandates such a conclusion. For the reasons that follow, we disagree with claimants' position and, accordingly, reverse the Court of Appeals as to this issue.

We begin our discussion with a brief review of the history of the statute in question. The main statutory provisions controlling UM and UIM insurance in North Carolina are codified as subdivisions (b)(3) and (b)(4), respectively, of N.C.G.S. § 20-279.21. The UM provision, (b)(3), was first adopted by the General Assembly in 1961, and the UIM provision, (b)(4), was adopted in 1979. Both subdivisions have been amended several times over the years.

The purposes behind the original enactments are clear. "Our uninsured motorist statute was enacted by the General Assembly as a result of public concern over the increasingly important problem arising from property damage, personal injury, and death inflicted by

motorists who are uninsured and financially irresponsible." *Moore v. Hartford Fire Ins. Co. Group*, 270 N.C. 532, 535, 155 S.E.2d 128, 130 (1967). Likewise, the UIM addition to the statute was passed to address circumstances where " 'the tortfeasor has insurance, but his [or her] coverage is in an amount insufficient to compensate the injured party for his full damages.' " *Harris v. Nationwide Mut. Ins. Co.*, 332 N.C. 184, 189, 420 S.E. 2d 124, 127 (1992) (quoting James E. Snyder, Jr., *North Carolina Automobile Insurance Law* § 30-1 (1988)). "Under North Carolina law, an insured may purchase UM coverage alone or UM and UIM coverage in combination, but he [or she] may not purchase UIM coverage by itself." George L. Simpson III, *North Carolina Uninsured and Underinsured Motorist Insurance* xvii (1998) [hereinafter *N.C. UM and UIM Insurance*].

N.C.G.S. § 20-279.21, which encompasses the UM and UIM provisions, is titled " 'Motor vehicle liability policy' defined" and begins with subsection (a), which provides that in North Carolina, insurers may issue two kinds of motor vehicle liability policies: an "owner's policy" or an "operator's policy." The requirements of these two types of policies are substantially different.

While not defined in the statute, an "owner's policy" is a motor vehicle liability policy that insures "the holder against legal liability for injuries to others arising out of the ownership, use or operation of a motor vehicle owned by him [or her]." *Howell v. Travelers Indem. Co.*, 237 N.C. 227, 229, 74 S.E.2d 610, 612 (1953). The requirements for an owner's policy are set forth in subsection (b). "[Subsection] (b) requires that an owner's policy designate the particular vehicles it insures and that it provide bodily injury and property damage liability coverage to the named insured and certain other persons while using [the] vehicles." *N.C. UM and UIM Insurance* at 103.

In 1961, the General Assembly enacted chapter 640 of the Session Laws, titled: "An Act to Amend G.S. § 20-279.21 Defining Motor Vehicle Liability Insurance Policy for Financial Responsibility Purposes so as to Include Protection Against Uninsured Motorists." The Act provided in part:

(2) Striking out the period at the end of subdivision 2 [of N.C.G.S. § 20-279.21(b)] and inserting in lieu thereof the word and punctuation "; and"; and

(3) Adding thereto a new subdivision to be designated as subdivision 3 . . . .

Ch. 640, sec. 1(2), (3), 1961 N.C. Sess. Laws 831, 832. Semicolons are typically used to connect clauses that are closely related in thought. Here, the addition of the semicolon and of the word "and" between subdivision (2) and the new subdivision (3), as well as the title of the Act itself, unambiguously indicates that subdivision (3) is a part of the law that explains the definition of "motor vehicle liability insurance policy" and is *not* an unrelated subdivision that presents "bodily injury liability policy" as a separate and distinct category.

The intent of the drafters of the 1961 amendment to N.C.G.S. § 20-279.21(b) appears to us to be unmistakable. Because subdivision (2) addresses both "bodily injury to or death" *and* "injury to or destruction of property," it follows that those two separate concerns are addressed in the new subdivision. Thus, subdivision (3) begins at the conclusion of subdivision (2) as follows:

(2) . . . ; and

(3) No policy of *bodily injury liability insurance* . . . shall be delivered or issued . . . unless coverage is provided therein . . . in limits for *bodily injury* or death set forth in Subsection (c) of paragraph 20-279.5 . . . for the protection of persons . . . entitled to recover damages . . . because of bodily injury, sickness or disease, including death . . . . Such provisions shall include coverage for . . . persons . . . entitled to recover damages . . . because of injury to or destruction of the property of the insured, with a limit . . . of five thousand dollars . . . .

(Emphasis added.) This language sets apart "bodily liability insurance" in order to mandate a different level of coverage than that set forth in the provisions that apply to property damage. Subdivision (3) is a continuation of the law applying to motor vehicle liability policies. There is no public policy rationale for the General Assembly to have created a new category of insurance policy for uninsured motorist coverage in (b)(3), and there is no indication that it meant to do so or that it did so.

In 1979, the General Assembly enacted chapter 675, titled, "An Act to Authorize the Issuance of Underinsured Motorist Coverage by Insurers at the Written Request of Insureds." A new subdivision (4) was added to N.C.G.S. § 20-279.21(b), which provided in part:

(4) In addition to the coverages set forth in subdivisions (1) through (3) of this subsection, at the written request of the insured, shall provide for underinsured motorist insurance coverage to be used with policies affording uninsured motorist at limits in excess of the limits prescribed by the applicable financial responsibility law pursuant to this section . . . .

Ch. 675, sec. 1, 1979 N.C. Sess. Laws 720, 720-21.

A 1992 amendment to (b)(4) provided that

[i]f the named insured does not reject underinsured motorist coverage and does not select different coverage limits, the amount of underinsured motorist coverage shall be equal to the higher limit of bodily injury liability coverage for any one vehicle in the policy.

Act of July 2, 1992, ch. 835, sec. 9, 1991 N.C. Sess. Laws 322, 331, 332 (clarifying the uninsured and underinsured motorists law). As we stated in *Isenhour v. Universal Underwriters Ins. Co.*,

[w]hen a statute is applicable to the terms of an insurance policy, the provisions of the statute become a part of the policy, as if written into it. If the terms of the statute and the policy conflict, the statute prevails. . . . Under N.C.G.S. § 20-279.21(b)(4), the UIM coverage is the same as the policy limits for automobile liability unless the insured has rejected such insurance or selected a different limit, and this rejection or selection must be in writing.

341 N.C. at 605, 461 S.E.2d at 322. Since the excess liability policy is silent as to UIM coverage, claimants contend that the Financial Responsibility Act incorporates the requirement into the excess policy by operation of law.

In summary as to this argument, we conclude that subdivision (3) requires UM coverage in a motor vehicle liability policy under certain circumstances and sets specific limits on the amounts of coverage in the two component parts of the motor vehicle liability policy: one for bodily injury and one for property damage. Thus, we find no basis for claimants' argument that the phrase "policy of bodily injury liability insurance" in subdivision (3) denotes a liability policy, more expansive than a "motor vehicle liability policy," into which the requirements of the Financial Responsibility Act as set forth in N.C.G.S. § 20-279.21(b) are incorporated by operation of law.

**PROGRESSIVE AMERICAN INS. CO. v. VASQUEZ**

[350 N.C. 386 (1999)]

Under N.C.G.S. § 20-279.21(g),

> [a]ny policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess for additional coverage shall not be subject to the provisions of this Article. With respect to a policy which grants such excess or additional coverage the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this section.

N.C.G.S. § 20-279.21(g) (Supp. 1998). While N.C.G.S. § 20-279.21(g) refers to a single policy as opposed to separate and distinct policies, it is indicative of legislative intent to exempt excess coverage from the requirements of the Financial Responsibility Act. Furthermore, N.C.G.S. § 58-3-152, effective 14 August 1997, specifically allows insurers to exclude UIM coverage from umbrella and excess liability policies, which suggests that the legislature did not intend to mandate UIM coverage in separate umbrella or excess liability policies.

Thus, claimants' argument that the separate excess liability policy need not be a motor vehicle liability policy as defined and delineated by N.C.G.S. § 20-279.21 must fail. Under N.C.G.S. § 20-279.21(a), a "motor vehicle policy" of liability insurance must be "certified as provided in G.S. 20-279.19 or 20-279.20 as proof of financial responsibility." Here, the excess liability policy in question does not meet that requirement and, therefore, is not required to offer the insured UM and UIM coverage pursuant to N.C.G.S. § 20-279.21(b)(3) and (b)(4).

We note that claimants contend that we should not consider the argument that the excess liability policy does not meet the requirements of a motor vehicle liability policy because Aetna failed to raise this issue below. We disagree in that Aetna's first assignment of error from the trial court's order is that the trial court erred in determining that the excess liability policy provided UIM coverage as a matter of law. The only statutory grounds for requiring UM/UIM coverage is N.C.G.S. § 20-279.21 dealing with motor vehicle liability policies. We conclude that this issue is properly before us.

The claimants also rely, as did the Court of Appeals, on our decision in *Isenhour v. Universal Underwriters Ins. Co.* to support their contention that the Financial Responsibility Act requires UIM cover-

age in excess liability policies. The specific issue we addressed in *Isenhour* was "[w]hether a multiple-coverage fleet insurance policy which includes umbrella coverage must offer UIM coverage equal to the liability limits under its umbrella coverage section." 341 N.C. at 603, 461 S.E.2d at 320. In *Isenhour*, the vehicle plaintiff was driving when the accident occurred was covered by a multiple-coverage fleet insurance policy that included umbrella coverage. It was purchased by his employer and issued by defendant Universal Underwriters Insurance Company. Defendant argued that the underlying policy and the umbrella policy were separate and distinct policies and that the umbrella component of the policy did not apply to plaintiffs' claim. We concluded that because the umbrella section of the policy provided liability coverage in the amount of $2,000,000, the UIM coverage offered had to be equal to the total amount of liability coverage offered as was then required under N.C.G.S. § 20-279.21. *Id.* at 606, 461 S.E.2d at 322.

Thus, the issue addressed in *Isenhour* was *how much* UIM insurance was available under the 1992 version of N.C.G.S. § 20-279.21, not whether a separate and distinct policy of excess liability must also offer UM/UIM coverage. Where there are separate and distinct underlying and excess liability policies, the legislature's policy of providing some compensation to innocent victims who have been injured by financially irresponsible motorists is satisfied by requiring the underlying, primary policy to provide UIM coverage "equal to the highest limit of bodily injury . . . liability coverage for any one vehicle in the policy," where the insured has neither rejected UIM coverage nor selected a different coverage limit in the motor vehicle liability policy. While we are aware that, in deciding *Isenhour*, this Court's decision was "aided" by *Krstich v. United Servs. Auto. Ass'n,* 776 F. Supp. 1225 (N.D. Ohio 1991), in which there were also separate underlying and excess liability policies, *Krstich* is a decision rendered by a federal court and is not dispositive here. We also note that *Krstich* was decided under Ohio law and that state's applicable statute. The court in *Krstich* in dicta did, however, continue by analyzing North Carolina law. Needless to say, we disagree with that court's ultimate analysis.

We do not find that N.C.G.S. § 20-279.21, *Isenhour,* or public policy requires that an excess liability policy offer separate UM/UIM coverage in addition to what is provided by the underlying policy where there are two separate policies: an underlying, primary policy required by law under the Financial Responsibility Act and an excess

**PROGRESSIVE AMERICAN INS. CO. v. VASQUEZ**

[350 N.C. 386 (1999)]

liability policy voluntarily purchased by the insured to provide further protection from liability for the insured.

Where there are separate and distinct excess liability and underlying policies, UIM coverage is not written into the excess liability policy by operation of law and exists only if it is provided by the contractual terms of the excess policy. Here, the excess liability policy makes no reference to providing UIM coverage. As the terms of the excess liability policy itself do not provide UIM benefits, and the Financial Responsibility Act is not applicable to the excess liability policy, claimants cannot prevail on this issue.

We now turn our attention to issues raised in claimants' conditional petitions for discretionary review. In addition to the $250,000 of primary liability coverage claimants received from plaintiff Progressive American Insurance Company, claimants all received workers' compensation benefits under a workers' compensation policy issued by Aetna to T.A. Loving, Inc.

In granting Aetna's motion for summary judgment, the trial court concluded that Aetna's maximum UIM liability under the BAP is $1,000,000 reduced by the amount of primary carrier liability coverage paid by plaintiff and the aggregate amounts paid or payable to all claimants under any workers' compensation policy. The Court of Appeals affirmed the trial court's holding that the BAP provides $1,000,000 per accident reduced by the $250,000 paid by Progressive American and the trial court's stacking of the claimants' individual workers' compensation benefits in calculating the reduction to the amount payable under the BAP.

[2] In their appeal, claimants argue that the BAP should be construed to provide a UIM coverage limit of $1,000,000 per claimant, as opposed to per accident, and that workers' compensation offsets should be deducted from each individual claim, not stacked against the total UIM coverage provided by the BAP.

N.C.G.S. § 20-279.21(e) provides that a motor vehicle policy "need not insure against loss from any liability for which benefits are in whole or in part either payable or required to be provided under any worker's compensation law." The terms of the BAP contain the following limit of liability provision:

D.  LIMIT OF INSURANCE

 . . . .

2. Any amount payable under this coverage shall be reduced by:

    a. All sums paid or payable under any workers' compensation, disability benefits or similar law exclusive of non-occupational disability benefits.

As we noted in *Manning v. Fletcher*, 324 N.C. 513, 517, 379 S.E.2d 854, 856 (1989), "[t]wo public policies are inherent in N.C.G.S. § 20-279.21(e). First, the section relieves the employer of the burden of paying double premiums, and second, the section denies the windfall of a double recovery to the employee."

Claimants argue that the language of N.C.G.S. § 20-279.21(b)(4) mandates that the BAP's UIM coverage limit of $1,000,000 be provided per claimant, as opposed to per accident. To bolster their contention that the language of the statute mandates that UIM be provided per claimant, claimants cite the following portion of N.C.G.S. § 20-279.21(b)(4):

Underinsured motorists coverage is deemed to apply to the first dollar of an underinsured motorists coverage claim beyond amounts paid to the claimant under the exhausted liability policy.

In any event, the limit of underinsured motorist coverage applicable to any claim is determined to be the difference between the amount paid to the claimant under the exhausted liability policy or policies and the limit of underinsured motorist coverage applicable to the motor vehicle involved in the accident.

N.C.G.S. § 20-279.21(b)(4), paras. 1, 2 (Supp. 1998). The language of (b)(3) sets a $1,000,000 cap for "the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom." We do not read (b)(3) or (b)(4) as requiring UIM coverage to be provided per claimant.

As Aetna notes, in *Aills v. Nationwide Mut. Ins. Co.*, 88 N.C. App. 595, 363 S.E.2d 880 (1988), the Court of Appeals upheld a similar limiting provision. The court stated, "[w]e construe the policy's 'each accident' provision to mean that $100,000 is the outer aggregate limit of defendant's exposure per accident (should there be multiple claims)." *Id.* at 597-98, 363 S.E.2d at 882. Here, as the Court of Appeals stated, "[t]he BAP explicitly, by its terms, provides that

its coverage applies on a per accident basis." *Progressive Am. Ins. Co.*, 129 N.C. App. at 749, 502 S.E.2d at 14. Neither N.C.G.S. § 20-279.21(b)(3) nor (b)(4) precludes application of UIM coverage on a per-accident basis.

We hold that the Court of Appeals did not err in concluding that the BAP's $1,000,000 UIM coverage limit applies per accident, as opposed to per claimant. We also hold that the Court of Appeals did not err in concluding that "[t]he policy is clear and unambiguous that any amount payable under the BAP is reduced by *all* worker's compensation benefits paid or payable for the accident and by the amount paid by the tortfeasor's liability carrier." *Id.* at 750, 502 S.E.2d at 15 (emphasis added).

In conclusion, for the reasons stated herein, we affirm the Court of Appeals with respect to its findings that the UIM coverage provided by the BAP applies per accident and is reduced by the aggregate of workers' compensation benefits paid or payable to all claimants for the accident and the $250,000 paid to claimants by Progressive American. However, because we conclude that the Financial Responsibility Act is not applicable to the excess liability policy, and the language of the excess liability policy does not by its terms provide UIM coverage, we reverse the Court of Appeals' holding that the excess liability policy provides UIM coverage and remand to that court for further remand to the Superior Court, Wake County, for proceedings consistent with this opinion.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

Justice FRYE dissenting.

In this case, the majority concludes that because the commercial excess liability policy in question is not a "motor vehicle liability policy" as defined by N.C.G.S. § 20-279.21(a), it is not required to offer the insured uninsured motorist (UM) and underinsured motorist (UIM) coverage pursuant to N.C.G.S. § 20-279.21(b)(3) and (b)(4). I respectfully dissent from the majority's decision on this issue.

Once again this Court is called upon to interpret a complex and difficult statute, N.C.G.S. § 20-279.21 (Supp. 1998). We must decide whether, in this case, the statute requires the insurer to provide UIM coverage under subdivision (b)(4) of the statute. However, in order to do so, we must first determine whether the policy at issue was

required to provide UM coverage, because N.C.G.S. § 20-279.21(b)(4) requires that policies insuring automobile liability that are written at limits exceeding the minimum statutory liability limits and that afford UM coverage must provide UIM coverage unless rejected by a named insured. *See Sutton v. Aetna Cas. & Sur. Co.*, 325 N.C. 259, 263, 382 S.E.2d 759, 762 (1989).

Effective 14 August 1997, the General Assembly amended chapter 58 of the North Carolina General Statutes to permit insurers to limit or exclude UM and UIM coverage with respect to insurance policies providing excess liability coverage. *See* N.C.G.S. § 58-3-152 (Supp. 1998). Thus, the issue presented by this case is whether a commercial excess liability policy, which covers bodily injury arising out of the ownership, maintenance, or use of a motor vehicle, issued prior to the effective date of N.C.G.S. § 58-3-152, provides UIM coverage despite the policy's silence as to such coverage. While the majority has set forth one reasonable interpretation of N.C.G.S. § 20-279.21, it is not writing on a clean slate. This Court has already spoken to the interpretation of N.C.G.S. § 20-279.21(b)(3) and (b)(4) on a closely related, if not identical, issue. I would hold that our interpretation of N.C.G.S. § 20-279.21(b)(4) articulated in *Isenhour v. Universal Underwriters Ins. Co.*, 341 N.C. 597, 461 S.E.2d 317 (1995), controls this question and that the commercial excess liability policy at issue in this case does provide UIM coverage.

In *Isenhour v. Universal Underwriters Ins. Co.*, we addressed the question whether a multiple-coverage fleet insurance policy that included umbrella coverage was required to offer UIM coverage equal to the liability limits under its umbrella coverage section. *Id.* In a unanimous decision, we held that, under the version of N.C.G.S. § 20-279.21(b) applicable at that time, the insurer was required to offer the insured UIM coverage in an amount equal to the automobile bodily injury coverage provided in the umbrella coverage section of the policy. *Id.* at 605, 461 S.E.2d at 322.

In reaching that conclusion in *Isenhour*, we examined the conditions under which a policyholder is entitled to UIM coverage. We first noted the analysis of the decision of *Krstich v. United Servs. Auto. Ass'n*, 776 F. Supp. 1225 (N.D. Ohio 1991), which determined that " 'a "policy of bodily injury liability insurance" which covers "liability arising out of the ownership, maintenance, or use" of a motor vehicle' " must provide UM coverage. *Isenhour*, 341 N.C. at 604, 461 S.E.2d at 321 (quoting *Krstich*, 776 F. Supp. at 1234 (applying North

Carolina law)). Pursuant to N.C.G.S. § 20-279.21(b)(4), such a policy must provide UIM coverage if the policyholder has elected liability coverage above the statutory minimums. *See id.*; *see also Sutton*, 325 N.C. at 263, 382 S.E.2d at 762. In addition, the policyholder must not have executed a rejection of UIM coverage. *Isenhour*, 341 N.C. at 605, 461 S.E.2d at 322; *see also* N.C.G.S. § 20-279.21(b)(4). Because the statutory prerequisites were met, we held that the defendant-insurer in *Isenhour* was required to have offered the insured UIM coverage under the umbrella coverage section of the fleet policy in an amount equal to the limit of automobile bodily injury liability coverage provided by the insured's umbrella coverage.

The rationale of *Isenhour* is that subdivision (b)(3) requires an excess liability policy to provide UM coverage and that, when read together, subdivisions (b)(3) and (b)(4) mandate UIM coverage. While the umbrella coverage at issue in *Isenhour* was part of a multi-coverage policy, we adopted the rationale of *Krstich*, a case which very clearly involved separate underlying and excess insurance policies, as a basis for our decision. As noted by the majority, *Krstich* is a federal case decided under Ohio law and thus not binding on this Court; however, the *Krstich* court said that the result would be the same under both the Ohio statute and the North Carolina statute. This Court did not reject that assertion in *Isenhour* and thus approved an interpretation of N.C.G.S. § 20-279.21(b)(3) and (b)(4) that would require policies of bodily injury liability insurance which cover liability arising out of the ownership, maintenance, or use of a motor vehicle to provide UM coverage and UIM coverage if the other statutory prerequisites are met. Our analysis in *Isenhour* was not dependent upon the policy satisfying the definition of "motor vehicle liability policy" contained in N.C.G.S. § 20-279.21(a).

In *Isenhour*, this Court gave an interpretation to N.C.G.S. § 20-279.21(b)(3) and (b)(4) that, if followed in this case, would require an excess liability policy to provide UIM coverage. The General Assembly has not rejected the interpretation given to N.C.G.S. § 20-279.21(b)(3) and (b)(4) in the *Isenhour* decision. Instead, the General Assembly amended chapter 58 of the North Carolina General Statutes, effective 14 August 1997, so as to permit insurers "to limit or exclude UM and UIM coverage with respect to insurance policies providing excess liability coverage." N.C.G.S. § 58-3-152. However, the enactment of N.C.G.S. § 58-3-152 did not affect the interpretation of N.C.G.S. § 20-279.21(b)(3) and (b)(4) adopted in *Isenhour*.

Finally, and perhaps most important, the interpretation of N.C.G.S. § 20-279.21(b)(4) given in *Isenhour* fulfills the "avowed purpose of the Financial Responsibility Act, of which N.C.G.S. § 20-279.21(b)(4) is a part, [which] is to compensate the innocent victims of financially irresponsible motorists." *Sutton*, 325 N.C. at 265, 382 S.E.2d at 763. The majority's construction ignores our long-standing tenet that, as a remedial statute, the provisions of N.C.G.S. § 20-279.21(b)(4) should be "liberally construed so that the beneficial purpose intended by its enactment may be accomplished." *Id.*

The umbrella policy issued by Aetna in this case provides bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of a motor vehicle. Therefore, pursuant to N.C.G.S. § 20-279.21(b)(3) as interpreted by *Isenhour*, the excess liability policy would be required to provide UM coverage, and under the precedent of *Isenhour*, I would hold that the policy must also provide UIM coverage pursuant to N.C.G.S. § 20-279.21(b)(4).

Justice MARTIN joins in this dissenting opinion.